LAW OFFICES OF NEIL A. BURSTEIN

Westchester Office
63 Winterberry Circle
Cross River, New York 10518

Attorney and Counsel at Law

Neil A. Burstein
www.neilburstein.com
email: nabesq1@gmail.com
phone: 914-977-3467

October 11, 2016

The Honorable Vincent L. Briccetti
United States Judge
United States District Court
300 Quarropas Street, Room 630
White Plains, NY 10601

> Re: Narrative Ark Entertainment LLC v. Archie Comic Publications, Inc., et. al.
> Index No. 7:16-cv-06109-VB

Dear Judge Briccetti:

This letter is in opposition to Defendant, Archie Comic Publications, Inc. ("ACP") letter motion for an Order granting an extension of time for ACP to respond to the Complaint of Plaintiff, Narrative Ark Entertainment LLC ("Plaintiff") until October 13, 2016.

Unfortunately, counsel for Plaintiff was not given an opportunity to respond to the letter motion because the Order was granted the same day as the papers were filed on the ECF system. Counsel for Plaintiff was observing the Jewish New Year on October 3, 2016, the day the motion was filed and granted. The ECF notification of the filing was received in counsel for Plaintiff's email box at 4:22 pm on October 3, 2016 and the notification granting the Order was received on 5:56 pm the same day.

As will be demonstrated below, the facts and circumstances are not as claimed by counsel for Defendant ACP, and it is respectfully submitted that the Order be rescinded.

Plaintiff duly served the summons and complaint on ACP by service on the Secretary of State of New York on August 17, 2016 pursuant to Section 306 of the Business Corporation Law. Defendant ACP was already seriously in default when its counsel first contacted the undersigned regarding an extension request. The request was not granted because counsel for Plaintiff needed time to confer with his client and investigate the specious sounding reasons stated for the default.

<u>The Summons and Complaint Were Properly Delivered By the U.S. Postal Carrier</u>

By way of background, the summons and complaint were delivered by the Secretary of State's Office via certified mail, addressed to Jonathan B. Goldwater, 629 Fifth Avenue, Pelham,

NY 10803-1242. Postal delivery was made in due course during regular business hours and during the business work week. The certified letter was mailed to the person and address designated for service of process by ACP and listed in the entity records of the NYS Department of State, Division of Corporations. This address was confirmed as the correct and current address by counsel for Defendant ACP during the phone conversation when the request for an extension of time was originally made.

To obtain further information regarding what actually happened, a copy of the certified mailing envelop was obtained from the Department of State and is attached hereto. The letter is correctly addressed in accordance with the information on file with the NYS Department of State. The postal carrier notation on the envelop reads:

>   Return to Sender
>   Attempted Not Known
>   Unable to Forward
>   Return to Sender

A main regional branch of the U.S Post Office was contacted to explain the meaning of the postal notation. The Manager of Customer Services advised counsel that this notation is used by the postal carrier when the carrier is told by a person at the location that the person to whom the letter is addressed is not known. At best, these circumstances might suggest an office failure, at worst, at attempt by Defendant ACP to evade legitimate service of process. We can only speculate due to the fact that no statements have been provided by Defendant ACP as to what happened.

There are several statements made by counsel for Defendant ACP which need to be corrected. Counsel for Defendant ACP states that counsel for Plaintiff had not provided a response to his extension request. While this is partially correct, counsel for Defendant neglects to mention that I advised via email on Friday, September 30, 2016, that I was out of the office but would respond to his extension request early the following week. Rather than wait for the response, counsel for ACP filed this motion on October 3, 2016 during a religious holiday namely, the Jewish New Year.

While it may also be true that his firm only recently learned of the litigation, there can no question that Defendant ACP was well aware of the litigation due to the extensive publicity surrounding the filing of the summons and complaint. Indeed, the internet and social media blogs reported extensively about the lawsuit and the New York Post even published a ¾ page story on August 7, 2016 (copy attached). Accordingly, to suggest that Defendant ACP was somehow unaware of the lawsuit is ludicrous. Further, given the business relationship between Defendant ACP and Co-Defendant Sega of America ("Sega"), it is likely that the Co-Defendants discussed the litigation when "Sega" was served on 8/18/2016. Shortly thereafter, and *before* the expiration of the time to answer the complaint, counsel for Sega contacted the undersigned and was granted an extension of time.

### ACP Has Failed to Meet The Relief Standard in Judge Briccetti's Practice Rules

According to Rule 1F of your Honor's Individual Practices, "Absent extraordinary circumstances, requests for extensions will be denied if not made before the expiration of the original deadline". In the instant matter, the extension request was *not* made before the expiration of the original deadline. No reason or explanation has been given by anyone at ACP with knowledge of the circumstances as to why a certified package from a government agency addressed to the Chief Executive Officer of ACP was refused delivery or was otherwise not accepted. Glaringly missing are any statements from Defendant ACP concerning who was present when delivery was made and the reasons the delivery was not accepted.

Under the circumstances, Defendant ACP has not demonstrated extraordinary circumstances and it is respectfully submitted that the default should not be relieved.

ACP has Also Failed to Meet the "Good Cause Standard" for the Requested Extension

Rule 6 (b) of The Federal Rules of Civil Procedure differentiates between requests for extensions made *before* the applicable time has expired and requests made *after* the time has expired. If the request is made before the time has expired, then only good cause must be shown. If made *after* the time period has expired, as in the instant case, the "excusable neglect" standard applies. In the landmark case of *Pioneer Investment Services Company v. Brunswick Associates LP*, 507 U.S. 380 (1993), the Supreme Court set out four factors to guide in the analysis of excusable neglect: [1] the danger of prejudice to the opposing party, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." In applying *Pioneer*, the Second Circuit has adopted what has been characterized as a "hard line" test for determining whether a party's neglect is excusable. *In re Enron*, 419 F.3d 115, 121 (2d Cir. 2005). Fault in the delay remains a very important factor — perhaps the most important single factor — in determining whether neglect is excusable. *Graphic Communications Int'l Union*, 270 F.3d at 5-6 (reaffirming that "[t]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import," . . . we have continued to uphold findings of `no excusable neglect' where the court cited the absence of unique or extraordinary circumstances" (citation and internal quotation marks omitted, alteration in original)); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir.) ("[A]t the end of the day, the focus must be upon the nature of the neglect. Therefore we must examine carefully the reasons [given] for missing the deadline."), *cert. denied*, 531 U.S. 929, 121 S.Ct. 309, 148 L.Ed.2d 248 (2000); *In re Au Coton, Inc.*, 171 B.R. 16, 18 (S.D.N.Y.1994). Weighing the four *Pioneer* facts to the instant matter, the two most important facts, namely factors 3 and 4, strongly militate against Defendant ACP.

It bears emphasizing that no reason or explanation has been provided by anyone at ACP why the certified delivery addressed to Jonathan Goldwater, the Chief Executive Officer of ACP, was not accepted for delivery. Counsel for Defendant ACP confirmed that the delivery address was correct. The postal notation indicates that the postal carrier was told that Jonathan Goldwater was not known at the address and no forwarding address was provided. Under the circumstances, the facts and circumstances suggest that Defendant ACP simply refused to accept delivery. Absent statements from persons with knowledge of the circumstances, we can only speculate as to what actually happened.

As set forth above, no statements by the receptionist or other office person of Defendant ACP has been provided regarding how mail deliveries are routinely handled and explaining why, in the instant case, the certified mail delivery was not accepted. Rather than provide verified statements from Defendant ACP, counsel for Defendant ACP merely states that ACP has not been served with copies of the Summons and Complaint in this action "through no fault of its own". Notwithstanding counsel's self-serving statement, Defendant ACP has not offered any evidence whatsoever to establish that Defendant ACP was not in fault in refusing or otherwise not accepting delivery. Public policy requires that the addresses designated by corporations for delivery of service of process be respected and updated in a timely manner. The legal system would suffer under the weight of a statutory system which could be so easily evaded by simply refusing delivery and the Court should not sanction such conduct.

Counsel for Defendant ACP also notes that it is prepared to move for dismissal of several of the causes of action set forth in the complaint including plaintiff's copyright allegations. It bears noting the Defendant ACP was recently a party to a second circuit federal court litigation (case no. 10 Civ. 08858- RMB) concerning very similar copyright infringement claims alleged by Ken Penders, another former ACP freelance comic book writer/creator. Notwithstanding similar claims of meritorious defenses, ACP's efforts to dismiss the copyright infringement claims in this case were not successful and the parties subsequently entered into a financial settlement on terms favorable to Penders. Similarly, Defendant ACP has no meritorious defenses to the copyright and other infringement claims alleged in Plaintiff's complaint.

While it is true that the Court has a policy of resolving disputes on the merits rather than permitting an entry of judgment by default, there is also a countervailing policy of not overturning defaults absent a showing of "excusable neglect" and not allowing parties to evade service of process. Defendant ACP has neither established excusable neglect or provided a reasonable explanation as to why the certified delivery was not accepted.

For all of the above reasons, it is respectfully requested that the Order extending Defendant ACP's time to answer be vacated thereby holding Defendant ACP in default.

Respectfully submitted,

Neil A. Burstein

cc: All counsel of Record