**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____X

                               )

NARRATIVE ARK ENTERTAINMENT LLC,    )

                               )   Case No.: CV 16-6109

         Plaintiff,           )

      v.                      )   **AMENDED COMPLAINT WITH JURY**

                               )        **TRIAL DEMAND**

                               )      **Electronically Filed**

ARCHIE COMIC PUBLICATIONS, INC. and   )

SEGA OF AMERICA, INC.            )

         Defendants.         )

_____X

Narrative Ark Entertainment LLC ("Plaintiff") for its Amended Complaint against Defendant Archie Comic Publications, Inc. ("ACP") and Defendant Sega of America, Inc. ("Sega") collectively (the "Defendants") alleges and states as follows:

**PARTIES**

1. On information and belief, Defendant ACP is a corporation duly organized under the laws of the State of New York, with a principal place of business located at 629 Fifth Avenue, Pelham, NY 10803.

2. On information and belief, Defendant Sega is a corporation duly organized under the laws of the State of California, with a place of business at 6400 Oak Canyon Ste 100, Irvine, California 92618.

3. Plaintiff is a New York Limited Liability Company with a principal business address of PO Box 712, Mamaroneck, New York 10543.

**JURISDICTION AND VENUE**

4. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. §§ 101, et seq., for violations of the Lanham Act, 15

U.S. C. § 1125 (a), for unfair competition, unjust enrichment and related claims under Federal and New York statutory and common law, and for Declaratory Judgment that the alleged copyright registrations of the Defendants were fraudulently obtained, are invalid and should be canceled.

5.  This Court has original jurisdiction under 28 U.S.C. §§ 1121 (a), 1331 and 1338 (a) and 1338 (b). Alternatively, this Court has jurisdiction over this action as it also involves claims arising under the Declaratory Judgment Act, 28 U.S.C. §2201. This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367 (a).

6.  This Court has personal jurisdiction over Defendant ACP because, under New York Civil Practice Law and Rules §§ 302 (a) (1 ) and (3), among other things, Defendant ACP has a principal place of business in the State of New York, is doing business in the State of New York and in this judicial district, and/or a substantial part of the events or acts of infringement complained of herein occurred in the State of New York and in this judicial district, and Defendant ACP has caused injury to Plaintiff and its intellectual property within the State of New York and in this judicial district.

7.  This Court has personal jurisdiction over Defendant Sega under New York Civil Practice Law and Rules §§ 302 (a) (1) and (3) because, among other things, Defendant Sega transacts business within the State of New York and contracts to supply goods or services within the State of New York, and/or has committed tortious acts and infringements within and without the state causing injury to Plaintiff and its intellectual property within the State of New York and in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred, and/or a substantial part of property that is the subject of the action is situated.

8.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), among other things, that this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, and/or a substantial part of property that is the subject of the action is situated, and/or under 28 U.S.C. § 1400 (a).

## FACTUAL ALLEGATIONS RELATING TO ALL CLAIMS

9.  On information and belief, Defendant ACP is a publisher and distributor of comic books, trade paperbacks, soft cover books, magazines, digital comic books, digital magazines, digital books and other digital publications, graphic novels, hard cover books, digest magazines and other publications and is in the business of producing, publishing and distributing the aforesaid publications that include characters, artwork, stories, plots and other creative expressions.

10. On information and belief, Defendant ACP offers its comic books, graphic novels, trade paperbacks, digest magazines and other publications for sale throughout the United States in various mass market outlets including newsstands, comic book specialty stores, bookstores, supermarkets, via subscription sales, and in various languages, publications and media to customers worldwide. It also offers comic books and other publications in digital formats and sells both print and digital comic books online.

11. On information and belief, in addition to producing and publishing its own comic books, Defendant ACP produces and/or publishes, distributes and sells comic books, trade paperbacks, soft cover books, magazines, graphic novels, hard cover books, digest magazines and other publications, and after a period of time, also began publishing digital comic books, digital magazines and other digital publications, for third party property-owners ("Licensors").

12. On information and belief, beginning on or about 1992, Defendant ACP entered into a worldwide licensing relationship with Defendant Sega to produce, sell and distribute, among other things, comic books, trade paperbacks, soft cover books, magazines, digital magazines and other digital books and publications, graphic novels, hard cover books, digest magazines and other publications based upon Sega's popular video game character Sonic the Hedgehog, and all related characters (collectively the "Licensed Comics "or "Sonic Comic Book Series").

13. On information and belief, at all relevant times, by virtue of the licensing relationship between Defendant ACP and Defendant Sega, Defendant Sega is jointly responsible for the publication, sale and distribution of the Licensed Comics and other publications such as the Sonic Comic Book Series worldwide.

14. On information and belief, the relationship between Defendant ACP and Defendant Sega continues to this day and now, on information belief, Defendant Sega's rights in connection with the Licensed Comics includes digital distribution rights and overseas English and foreign language printing and reprinting rights.

15. On information and belief, Defendant Sega had and continues to have a direct financial interest in, derives financial benefit from, and receives royalty payments from Defendant ACP, from the sale and distribution by Defendant ACP, and other third parties, of the Licensed Comics and other publications.

16. Scott D. Fulop ("Fulop") was employed by Defendant ACP as a staff editor from on or about August 1988 to May 1991, and again from on or about February 1994 to January 1996.

17. Fulop's employment with Defendant ACP ended in January of 1996. Thereafter, he was engaged as a freelance writer/artist for Defendant ACP's Sonic Comic Book Series and worked in this capacity from 1996 to 1998.

18. Fulop was aware of the business practices of Defendant ACP from his prior employment as staff editor for Defendant ACP during which time he often worked with freelance writers and artists used by Defendant ACP. From February of 1994 to January of 1996, Fulop was solely responsible for working with the freelance writers/artist/creators for all comic books relating to the Sonic Comic Book Series.

19. It was the business practice of Defendant ACP to invite freelance writers/artists to pitch story ideas which ACP would either accept or reject. If accepted, the freelance writer/artist would be invited to create and develop new stories and new and original characters.

20. During his employment with Defendant ACP as a staff editor, the invoice forms that Fulop provided to all freelancers, including those that worked on the Sonic Comic Book Series, did not contain any work for hire language, copyright or other legal language nor does Fulop recall ever issuing any such work for hire contracts.

21. After his employment with Defendant ACP ended, Fulop was invited to work as a freelance writer/artist for Defendant ACP and as such created and developed, either individually or in collaboration with other freelance writers, various stories, scripts, artwork, and other original expressions fixed in tangible form including new and original characters such as Mammoth Mogul as contributions to the Sonic Comic Book Series.

22. Fulop was not asked to sign any type of contract or work for hire agreement with Defendant ACP and never entered into any kind of contract or agreement, whether oral or written, with Defendant ACP either as a staff editor or thereafter as a freelance writer/artist and never entered into any such contracts or agreements with Defendant Sega.

23. Fulop's freelance work was assigned to him by Defendant ACP staff editor Justin Gabrie, whether such work was intended to be written by Fulop alone or in collaboration with other freelance writers.  Justin Gabrie would indicate whether it was to be a solo writing project or a combined effort with Kenneth Penders and with other writers.

24.  Upon information and belief, Kenneth Penders ("Penders") also worked as a freelance writer/artist for Defendant ACP for over twelve years.

25.  Fulop knew Penders from Fulop's prior employment as staff editor for Defendant ACP when he regularly engaged Penders services on behalf of defendant ACP as a freelance writer/artist.

26.  After his tenure as a staff editor for Defendant ACP, Fulop collaborated as a co-author with Penders on many freelance writing projects for Defendant ACP in addition to Fulop's solo assignments from Defendant ACP.

27. Fulop was paid a fixed sum for each accepted story/artwork covering first publication rights in North America. Payment did not cover any other rights. Fulop was paid only for those stories accepted by Defendant ACP and Defendant ACP was under no obligation to pay for any works not accepted.

28.  On information and belief, none of the checks or payment vouchers that either Fulop or Penders received from Defendant ACP in payment of their work contained any legal language or notices concerning copyright rights, work for hire or a transfer of rights to Defendant ACP or to Defendant Sega.  Nor did any of the correspondence concerning Fulop or Penders story ideas or the approvals relating thereto contain or have such terms or language.

29. When Fulop submitted freelance story ideas or work including the creation of new and original characters to Defendant ACP, at no times did he ever have any discussion with anyone at Defendant ACP concerning the issue of copyright ownership or the concept of "work for hire".  Nor was Fulop ever aware of Penders ever having such a conversation with Defendant ACP.

30.  At no time was the relationship between Fulop and Defendant ACP ever memorialized in any written agreement ever presented to or executed by Fulop, nor was there ever any written agreement between Fulop and Defendant Sega.

31. Plaintiff is aware of a number of other freelance writers/artists who worked with Defendant ACP and who were also involved in the creation of the Sonic Comic Book Series and is reasonably informed that they had never been asked to execute any "work for hire" agreements nor asked to sign any assignment documents.

32.  Fulop used the writing pseudonym Kent Taylor when submitting work to Defendant ACP and working with Penders and other writers on the Sonic Comic Book Series.

33.  The following are the new and original characters created by Fulop and copied, used and featured in Defendants ACP and Sega's publications, reprints and advertisements without authorization or permission:

Mammoth Mogul

Sergeant Simian

Lightning Lynx

Predator Hawk

Flying Frog

The Fearsome Foursome (group name for Sergeant Simian, Lightning Lynx, Predator Hawk and Flying Frog

Merlin Prower

Sir Connery, the Mighty Crusader

Black Death

Enchantress

Mathias Poe

Damocles the Elder

The Swords of Acorns

The Sword of Light

The Land of Dark

Fly, Fly Freddy

34. After 1998, Fulop ceased freelance writing for Defendant ACP and was no longer involved with the comic book publishing industry.

35.  Thereafter, Penders informed Fulop that Defendant ACP was beginning to reprint certain stories written solely by Fulop, reprint certain stories written and/or illustrated solely by Penders, reprint certain stories co-written by Fulop and Penders, reprint certain stories co-written by Fulop, Penders and other writers, as well as continuing to use some of their respective new and original characters in new stories and in other media.

36.  On information and belief, and according to the U.S. Copyright Office records, Penders filed and obtained copyright registrations in 2009 and 2010 for certain stories written and/or illustrated by

Penders, in some instances co-written by Fulop, and in some instances co-written by Fulop and other writers during their mutual tenure as freelance writers/artists/creators  (the "Penders Copyright Registrations") and four of said copyright registrations list Fulop as one of the copyright claimants in instances where Fulop was one of the writers.

37.   On information and belief, prior to the issuance of the Penders Copyright Registrations, written notice was sent by the Copyright Office to both Defendant ACP and Defendant Sega advising of the copyright applications being filed by Penders, and no objections were raised by Defendants with the Copyright Office.

38.   Fulop is the creator, author or co-author and owner of the copyrights in the stories**,** characters, and artwork he created as a freelance writer/artist/creator for Defendant ACP.  In addition to being listed as one of the copyright claimants in four of the Penders Copyright Registrations, Fulop filed and obtained additional copyright registrations in 2010 for his works.  Attached and made a part hereof as Exhibit A are copies of the copyright registrations owned and co-owned by Fulop (collectively the "Copyrighted Works"). Fulop retained all ownership rights in the Copyrighted Works until such rights were transferred by assignment to Plaintiff.

39. In certain instances, copyright registrations were also obtained by Fulop for the 2D artwork.

40. The aforementioned Copyrighted Works are all of copyrightable subject matter, as evidenced by the fact that the U.S. Copyright Office has granted registration for each of them.

41.  On information and belief, Penders attempted to obtain remuneration from Defendant ACP for the various works and original characters he created as a freelance writer and artist and which were being used in new stories as well as his original stories being reprinted by Defendant ACP but Defendant ACP refused to make any payments.

42. On information and belief, Defendant ACP commenced litigation in the United States District Court for the Southern District against Penders seeking, among other causes of action, to invalidate the Penders Copyright Registrations. Penders counterclaimed against ACP for copyright infringement, among other claims.  This litigation was assigned case no:  10 Civ 08858.

43. On information and belief, Judge Berman of the U.S. District Court for the Southern District of New York formally dismissed the action commenced by Defendant ACP against Penders.

44. On information and belief, there was no judicial determination in said action commenced by Defendant ACP against Penders affecting the validity of any of the Penders Copyright Registrations, and Penders retained ownership of all the Penders copyrights at issue in the litigation.

45. Fulop organized Narrative Ark Entertainment LLC in October 2014 and Fulop subsequently assigned and transferred all of the Copyrighted Works and other intellectual property rights to Plaintiff on October 5, 2015.  Attached and made a part hereof as Exhibit B is a copy of said copyright assignment.

46.  A demand letter was sent by Plaintiff's counsel to Defendant ACP on October 6, 2015 advising, among other things, that the use of Plaintiff's copyrighted works by Defendant ACP in various digital reprints as well as publishing numerous editions – in both paper and digital version - was without consent and infringing on Plaintiff's registered copyrights as well as in violation of other statutes. Attached and made a part hereof as Exhibit C is a copy of said letter.

47**.**  That Plaintiff and Defendant ACP entered into extended settlement negotiations but were not able to resolve the dispute.

48**.** Plaintiff is the holder and owner of the rights by assignment in the Copyrighted Works which have been infringed by Defendants as alleged hereunder.

49.  Plaintiff is informed and believes that Defendant ACP, without the permission or consent of Plaintiff or Fulop, has reproduced, sold, copied and authorized distribution of works containing the Copyrighted Works of Plaintiff without permission or consent. The aforementioned works include reprints and compilations of the works along with new derivative works utilizing stories and/or incorporate one or more of the characters, concepts or artwork created/ developed by Fulop and now owned by Plaintiff._Defendants never sought nor obtained permission from either Plaintiff or Fulop to use the Copyrighted Works in new publications, reprints, compilations, digital, and other formats and advertisements.

50.  Defendants did not have any license, authorization, permission or consent from Fulop or Plaintiff to copy and/or use the Copyrighted Works in reprints, digital and other formats and advertisements and such uses constitute infringement of the Copyrighted Works of Plaintiff.  To date, neither Fulop or Plaintiff has received any royalties or payment for reprint page rates or received any other compensation for Defendants continued unauthorized use of the Copyrighted Works of Plaintiff.

51.  Defendant ACP unauthorized activities and usages include, without limitation, the compilation and reprinting of the Copyrighted Works of Plaintiff within various Sonic publications, the copying and use of Fulop created storylines, and/or characters and other protected elements in other Sonic publications, books, and the creation of derivative works in the form of print and electronic media versions of the Copyrighted Works of Plaintiff for distribution and sale via electronic channels, including without limitation, iTunes for iPhone, iPod, iPad devices, Android devices, desktop and laptop computers, Comixology.com, BarnesandNoble.com, Amazon.com,  penguinrandomhouse.com, booksamillion.com.

52.  That Defendant ACP's unauthorized usages and activities include the copying and use of characters created by Fulop (now owned by Plaintiff) on the cover of several issues of the Sonic Comic Book Series including, without limitation, Sonic Saga Series Volume 6: Mogul Rising; print and digital October 22, 2014 which features, on the cover, the Mammoth Mogul character created by Fulop.

53.  The aforementioned activities of Defendant ACP have violated Fulop and Plaintiff's exclusive rights of reproduction, distribution and the preparation of derivative works. These actions constitute infringement of Fulop and Plaintiff's exclusive rights protected under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq*.)

54. A substantial number of the infringements alleged against Defendants herein occurred subsequent to the date of the registrations of the Copyrighted Works of Plaintiff and within three years of the filing of this Complaint, and, on information and belief, that such infringements are continuing to date along with the continuing sales of infringing works which commenced prior to registration are continuing and within the three period from the filing of this Complaint.  Attached and made a part hereof as Exhibit D is an identifying list of the various infringing publications of Defendant ACP, and the corresponding copyright registrations of Plaintiff infringed, of which Plaintiff is aware to date.  Plaintiff expects to identify additional infringements during discovery in this action.  Attached and made a part hereof as Exhibit E is an identifying list of infringing advertisements by Defendants and the corresponding copyright registrations of Plaintiff which are infringed of which Plaintiff is aware to date.   That Defendant Sega's, with knowledge of the infringing action hereto for alleged, induced, caused or materially contributed to the infringing activities of Defendant ACP and other parties selling, distributing

55.  Many of the infringements, as identified in Exhibits D and E, infringe one or more of the copyright registrations of Plaintiff entitling Plaintiff to statutory damages for each individual story, artwork and character infringed.

56. The demand letter sent by Counsel for Plaintiff on October 6, 2015 put Defendant ACP on notice that ACP was  infringing the Copyrighted Works of Plaintiff. Notwithstanding such notice, Defendant ACP continued to publish, reprint, package, distribute and make sales of infringing publications of the Copyrighted Works of Plaintiff, and authorize third parties to sell, distribute and otherwise use, in both digital and print formats, publications that infringed the Copyrighted Works of Plaintiff.

57.  That such sales and distribution were also made via Defendant ACP's website, via Comixology.com, Barnesand Noble.com, Amazon.com,  penguinrandomhouse.com, booksamillion.com, comic books stores and other distributors and applications, and that such sales and usages continue to date.

58. That the actions of Defendant ACP were intentional and willful and constitute willful copyright infringement.

59. That as recently as November 12, 2015, on information and belief, Defendant ACP with the knowledge and consent of Defendant Sega caused to be launched the "Official Archie Comics App" and new online storefront , making available for sale various publications of Defendant ACP and Defendant Sega, including stories and characters from the Copyrighted Works of Plaintiff in new digital versions and formats for IOS, Android and other mobile applications, including the various Sonic The Hedgehog titles which infringe the Copyright Works of Plaintiff, as well as launching the "Archie Unlimited" service making available individual and subscription sales for such works.

60. That using characters and stories from the Copyrighted Works of Plaintiff in Defendant ACP's new digital application specially created and designed for IOS, Android and other mobile applications constitutes a new, unauthorized derivative use in violation of Plaintiff's exclusive rights under 17 U.S.C. §106 entitling Plaintiff to multiple statutory damages.

61. That on information and belief, Defendant Sega was aware of, consented to and/or otherwise authorized such continued willful infringement by Defendant ACP.

62.  On information and belief, beginning on or about 2011 and in years thereafter, Defendant ACP purported to transfer to Defendant Sega by written agreement(s) its purported copyright interests in various Sonic the Hedgehog comics, other publications and characters which were created by various freelance writers/artists/creators of Defendant ACP.

63.  Defendant ACP and Defendant Sega never obtained ownership of the copyrights to the works developed, written and created by Fulop as a freelance worker for Defendant ACP.

64.  On information and belief, beginning on or about 2011 and in years thereafter, with the participation, knowledge and consent of Defendant Sega, Defendant ACP filed various copyright applications with the U.S. Copyright Office and obtained copyright registrations covering various Sonic the Hedgehog comics and publications listing authorship on the application in its name and naming Defendant Sega as the copyright claimant. That such copyright applications wrongfully failed to name Fulop or Plaintiff as the author and owner of  various stories and characters, and which stories and characters were in fact created and owned by Fulop, and now owned by Plaintiff.

65.  On information and belief, that Defendant Sega consented to, participated or otherwise knew about the various copyright registrations filed and obtained by Defendant ACP listing Defendant Sega as the copyright claimant.

66.  On information and belief, that said copyrights of Defendants include numerous group copyright registrations listing Defendant Sega as copyright claimant and that, on information and belief, each group copyright registration consists of several, different Sonic Comic Book Series publications, and one or more publications in that group infringes upon one or more of the registered Copyrighted Works of Plaintiff by, among other things, using without Plaintiff's knowledge or consent, Plaintiff's copyrighted works as part of the deposit copies used by Defendant ACP and Defendant Sega in filing their copyrights, materials exclusively owned by Plainttiff and or Fulop.

67.  On information and belief, that said copyright registrations of Defendants include several Individual publications listing Defendant Sega as copyright claimant, which duplicate, in part, works previously registered by Fulop and are now owned by Plaintiff, which infringe upon the registered Copyrighted Works of Plaintiff.

68. On information and belief, that said copyright registrations of Defendants, include registration for several individual publications listing Defendant Sega as claimant, which infringe upon the registered Copyrighted Works of Plaintiff.

69.  On information and belief, that Defendant ACP wrongfully claimed all authorship credit for the works listed on the aforesaid copyright registrations as an employer for hire, falsely claiming ownership, and representing to the U.S. Copyright Office and the public that the entire ownership of the copyrights belonged to Defendants rather than assigning proper ownership and attribution to Fulop or Plaintiff.

70. On information and belief, that Defendant ACP and Defendant Sega knew, or should have known, that they had no right to use some or all of the Copyrighted Works of Fulop without his permission or consent, and otherwise claim authorship and ownership in the copyright of the works created by Fulop which are now owned by Plaintiff.

71. On information and belief, by claiming the entire authorship of the works listed in the aforesaid copyright registrations and naming Defendant Sega as the copyright claimant in each of the registrations, Defendant ACP and Defendant Sega have jointly asserted and continue to assert a plain and express claim of authorship and ownership in works which were in fact created and owned by Fulop and which are now owned by Plaintiff, in violation of the exclusive copyright rights of Plaintiff.

72 . Attached and made a part hereof as Exhibit F is a list of the allegedly infringing group, duplicate and individual publication copyright registrations filed and registered by Defendant ACP. Said registrations name Defendant Sega as the copyright claimant, and on information and belief, wrongfully used deposit materials belonging to Plaintiff in connection with the filing of said registrations and failed to attribute proper prior authorship and ownership of the works created and registered by Fulop (now owned by Plaintiff).

73.  On information and belief, that such actions and wrongful assertions of copyright ownership by Defendant ACP and Defendant Sega in works owned and created by Fulop and now owned by Plaintiff constitutes distinct, independent and continuing acts of infringements of the registered Copyrighted Works of Plaintiff.

74. On information and belief, that the group, duplicate and individual publication copyright registrations of Defendant ACP and Defendant Sega falsely state, imply and create the false and misleading impression that Defendants are the sole creators, owners and authors of the entire copyrighted materials in which said copyrights are being claimed without disclosing the works created and owned by Fulop and/or Plaintiff as required by the applicable Copyright Office rules and regulations.

75. On information and belief, that the false claims of copyright ownership and other misrepresentations and infringing uses set forth in the copyright applications filed and registered by Defendant ACP on behalf of Defendant Sega occurred subsequent to the date of registrations of the Copyrighted Works by Fulop now owned by Plaintiff and within three years of the filing of this Complaint.

**COUNT I**

**COPYRIGHT INFRINGEMENT AND CONTRIBUTORY INFRINGEMENT AGAINST ALL DEFENDANTS**

76. Plaintiff incorporates by reference the allegations of paragraphs 1 through 75 of this Complaint as though fully alleged and set forth herein.

77.  By the actions alleged in this Complaint, Defendant ACP and Defendant Sega have infringed and unless enjoined by this Court, will continue to infringe the Copyrighted Works of Plaintiff by violating the exclusive rights of reproduction, distribution and the preparation of derivative works.

78.  Defendants by themselves, and/or by authorizing others to do so, and with knowledge of the infringing activities, have infringed, induced , caused  or materially contributed to the infringement of others of  the Copyrighted Works of Plaintiff by engaging in reproducing, sale and distribution of the Copyrighted Works of Plaintiff, using, selling and creating derivative works based on them, and publishing and  distributing throughout the United States and worldwide copies in various media and formats including print, digital and reprints to the public without Plaintiff's permission or authorization. These actions constitute infringement of Plaintiff's exclusive rights protected under 17. U.S.C. §101 *et seq*.

79. Through by the conduct averred herein, Defendants have further infringed Plaintiff's Copyrighted Works by the unauthorized use in advertisements in Sonic Comic Book Series as well as in other Defendant  ACP publications including Mega Man comics.

80. By the conduct averred herein, Defendants have also infringed Plaintiff's Copyrighted Works in violation of 17 U.S. C. § 106 by using copyrighted stories and characters created owned and created, in whole or in part by Plaintiff, as deposit materials to register certain group copyrights filed by Defendants in violation of the exclusive rights granted to Plaintiff under its copyrights, and that  such acts constitute separate, multiple and distinct acts of infringements for each of the registered Copyrighted Works of Plaintiff giving rise to independent claims for relief and damages including actual damages and defendants profits under U.S.C. § 504 (b) and statutory damages under U.S. C. § 504 ( c ).

81.  That the foregoing acts of Defendants have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

82.  Plaintiff is entitled to receive an accounting of all profits and monies received by Defendants from the publication, sale and distribution of the infringing publications and advertisements worldwide and all appropriate injunctive relief, including but not limited to the relief available under 17 U.S.C.   §§ 502-503.

83.  Plaintiff is further entitled to recover from the Defendants the damages, including attorney fees, Plaintiff has sustained and will sustain, any gains, profits and advantages obtained by Defendants as a result of the Defendants willful acts of infringement alleged in this Complaint, including but not limited to such damages and awards as are available under 17 U.S.C. §§ 504-505.

**COUNT II**

**CONTRIBUTORY AND VICAROUS COPYRIGHT INFRINGEMENT – AGAINST DEFENDANT SEGA**

84.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 83 of this Complaint as though fully alleged and set forth herein.

85. Plaintiff is informed and believes that at all relevant times, Defendant Sega had a direct financial interest in, and derived financial and other benefits from, such infringing conduct and by virtue of its licensing or other arrangements with Defendant ACP, was aware of and had the ability to control Defendant ACP's infringing activities as averred herein.

86.  That according to the records of the U.S. Copyright Office, Defendant ACP entered into a written agreement(s) with Defendant Sega whereby certain copyrights purportedly owned by Defendant ACP were transferred to Defendant Sega which copyrights, on information and belief, included works and copyrights owned in whole or in part by Plaintiff, thereby violating and infringing the Copyrighted Works of Plaintiff as herein alleged, and that Defendant Sega's actions, by agreeing and accepting such claims and transfers of copyright ownership,  constitute separate, distinct, and <u>multiple</u> acts of infringements for each of the registered Copyrighted Works of Plaintiff giving rise to independent claims for relief and damages including actual damages and defendants profits under U.S.C. § 504 (b) and statutory damages under U.S. C. § 504 ( c ).

87. That Defendant Sega's, with knowledge of all of the infringing action hereto for alleged, induced, caused or materially contributed to the infringing activities of Defendant ACP and other parties selling, distributing and otherwise using and infringing the Copyrighted Works of Plaintiff.

88.  By its conducts averred herein, Defendant Sega is vicariously liable for the infringements described herein and such actions have infringed Plaintiff's rights willfully, maliciously and with wanton disregard.

89.  As a direct and proximate result of said infringements by Defendant Sega, Plaintiff is entitled to damages in an amount to be proven at trial.

90.  Plaintiff is also entitled to Defendant Sega's profits attributable to the infringement pursuant to 17 U.S.C. § 504 (b), including an accounting with respect to such profits.

91. Plaintiff is further entitled to statutory damages pursuant to 17 U.S.C. § 504 ( c )  for those infringements, of which there are many, occurring after the date of registration of Plaintiff's copyrights.

92. Plaintiff is additionally entitled to its attorney's fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

## COUNT III

## VIOLATIONS OF THE LANHAM ACT

93.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 92 of this Complaint as though fully alleged and set forth herein.

94.  By the actions alleged in this Complaint, Defendants have engaged in false designation of origin and false and misleading description of fact regarding the creation, origin and ownership of the Copyrighted Works. The Defendants have published and sold or otherwise used the Copyrighted Works appearing in Defendant ACP's publications and advertisements throughout the United States in which false credit as to the source of the authorship is given to Defendants ACP and Sega thereby passing off Plaintiff's Copyrighted Works as those of Defendants.  Defendants have also engaged in false designation of origin and false and misleading description of fact regarding the creation, origin and ownership of Plaintiff's Copyrighted Works by registering copyrights with the U.S. Copyright Office which, on information and belief, claim ownership and authorship credit for certain works created, authored and owned by Plaintiff. Consumers viewing the group registrations filed and registered by Defendants are likely to believe they belong in whole to Defendants wherein they belong in whole or part to Plaintiff.

95.  As a result of Defendants false designation of origin, and /or false and misleading descriptions, the public has been led to believe that the Copyrighted Works of Plaintiff, are in fact stories originated and owned by Defendant ACP and Defendant Sega.

96.  Consumers are further mistakenly led to believe that Plaintiff, or Plaintiff's predecessor in title, has authorized the use of the Copyrighted Works in Defendant's publications and/or advertising when no such authorization has been obtained.

97.  By virtue of the conduct described therein, Plaintiff's reputation, good will and growth of its business has been irreparably harmed.

98.   Defendants have also engaged in violations of 15 U.S. Code § 1125 (a) (1) (B) by, on information and belief, engaging in commercial advertising or promotion utilizing the Copyrighted Works of Plaintiff and misrepresenting the nature, characteristic of the goods belonging to Plaintiff, by among other things, repacking the Copyrighted Works of Plaintiff in compilations and reprints without proper attribution.

99.   Defendants acts, as described above, have caused or are likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship or approval of the Copyrighted  Works among the trade or the public and therefore constitute unfair competition in violation of 15 U.S.C. §1125(a) and (b).

100.   Plaintiff has suffered and, unless Defendants are enjoined by this Court, will continue to suffer damages as a result of Defendants false and/or misleading statements and related tortious conduct. Plaintiff has no adequate remedy at law.

101.   Pursuant to 15 U.S.C. §1117, when of a violation of 15 U.S.C. § 1125(a) shall have been established in any civil action, the Plaintiff in such action shall, subject to the principles of equity and statutory limitations set forth therein, be entitled, *inter alia,* to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of the action, and in exceptional cases the court may award reasonable attorney fees to the prevailing party.

102.   Plaintiff is entitled to recover from Defendants profits, damages, costs and attorney's fees pursuant to 15 U.S.C. § 117, and is further entitled to the destruction of the infringing articles as provided in 15 U.S.C. § 118.

103.   This is an exceptional case within the meaning of 15 U.S.C. § 117(a), because Defendants conduct has been outrageous and its violation of Plaintiff's rights has been willful.

104.   Pursuant to 15. U.S.C. § 1117, Plaintiff is entitled to an equitable remedy of an accounting, and a disgorgement of all such wrongfully derived revenues and/or profits.


**COUNT IV**

**DECEPTIVE PRACTICES UNDER NEW YORK'S GENERAL BUSINESS LAW**

105.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 104 of this Complaint as though fully alleged and set forth herein.

106. The acts of Defendants as alleged herein have deceived or misled, or have a tendency to deceive or mislead the public.

107. The acts of Defendants as alleged herein have caused harm not only to the public but to Plaintiff as well by, among other things, depriving Plaintiff of economic opportunities and advantages, casuing diversion of trade, injury to goodwill and reputation, and the dilution of its rights, none of which may be fully ascertained at this time.

108.  The acts of Defendants constitute deceptive and unfair trade practices in that Defendants have fraudulently concealed the extent and use of properties belonging to Plaintiff.

109.  Defendants false and misleading representations of fact and conduct have influenced the purchasing decisions of the public.

110. By reasons of Defendants knowingly false and misleading representations of fact and conduct, Defendants have violated New York General Business Law § 349.

111. By reason of Defendants acts herein alleged, Plaintiff, as well as the public, has been injured.

112. The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless restrained by this Court, said irreparable harm will continue.

113.  Plaintiff has no adequate remedy at a law.

114.  Pursuant to N.Y. Gen. Bus. Law § 349 (h), Plaintiff is entitled to enjoin Defendants unlawful conduct as well as obtain damages, costs, disbursements, and attorney fees.

**COUNT V**

**COMMON LAW UNFAIR COMPETITION**

115.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 114 of this Complaint as though fully alleged and set forth herein.

116.   As described above, Defendants have engaged in false and misleading representations and omissions and engaged in deceptive conduct.

117.  Defendants conduct deceived or is likely to deceive the purchasers and potential purchasers of Defendant ACP's comic books and other publications.

118.  Defendants have engaged in unfair competition under the common law of the State of New York.

119.  As a direct result of said deceptive conduct, Plaintiff has sustained and is likely to continue to sustain damages and has suffered and continues to suffer damage to its business including, without limitation, diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of its rights, none of which may be fully ascertained at this time.

120. Plaintiff has no adequate remedy at law.

121. Plaintiff is entitled to exemplary and punitive damages by reason of Defendants willful, reckless and intentional conduct.

## COUNT VI

## <u>UNJUST ENRICHMENT</u>

122.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 121 of this Complaint as though fully alleged and set forth herein.

123.  As a consequence of Defendants actions in fraudulently concealing their activities, Plaintiff, and Plaintiff's predecessor it title,   has been denied any financial compensation and credit in connection with the publication and sale of the Plaintiff's Copyrighted Works.

124.  As a consequence of Defendants actions, Plaintiff has lost business opportunities caused by, among other things, diversion of trade  and been diminished in good will and reputation, and dilution of its rights, none of which may be fully ascertained at this time.

125.  Defendants have been enriched by the use and sale of the Plaintiff's Copyrighted Works in advertising, merchandising and the sale of comic books and other merchandise at Plaintiff's expense. The circumstances are such that equity and good conscience require the Defendants to make restitution in an amount to be proven at trial.

## COUNT VII

## <u>DECLARATORY JUDGEMENT</u>

126.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 125 as though fully alleged herein.

127. On information and belief, Defendant ACP and Defendant Sega have registered copyright to works owned and created, in whole or in part by Plaintiff and Plaintiff's predecessor in title, in violation of the exclusive rights granted to Plaintiff under its copyright registrations for the Copyrighted Works.

128  On information and belief, the asserted copyright registrations of Defendants failed to disclose material facts to the Copyright Office that portions on the materials being claimed as exclusively owned by Defendants were created and owned by Plaintiff and Plaintiff's predecessor in title.

129. On information and belief, that the asserted registrations of Defendants are invalid under the applicable laws and regulations.

130. On information and belief, that Defendants intentionally and willfully misrepresented the nature and extent of their contributions to the asserted registrations for which they were claiming copyright.

131. On information and belief, that the asserted copyrights of Defendants do not meet the existing requirement under of law and Copyright regulations under CFR 201.7

132. On information and belief, the Asserted Registrations of Defendant ACP and Defendant Sega were fraudulently obtained by willful misrepresentations and omission to the Copyright Office, are invalid and should be canceled. "When a court is convinced that a registration should be canceled, it should hold the registration invalid, and order the holder of the certificate to request the Copyright Office to cancel the registration. Such an action does not require an affirmative action by the Copyright Office. If the holder of the certificate fails to request cancellation by the Copyright Office, that party may be held in contemp". 5 Patry on Copyright § 17:108.

133.  Plaintiff seeks a declaration judgment that:

   a. The asserted registrations of Defendants are invalid and should be canceled, together with an order that commands Defendant ACP and Defendant Sega, as the holder of the certificates, to request the Copyright Office to cancel said registrations.

   b. Enjoining and prohibiting Defendants from seeking to obtain copyright registrations for materials created in whole or in part by Plaintiff's predecessor and now owned by Plaintiff and ordering Defendants from using any of Plaintiff's Copyright Registrations in any manner without Plaintiff's prior written consent.

**WHEREFORE**, Plaintiff demands judgment:

A.  Ordering an accounting of all revenues received by Defendants as a result of its unlawful conduct.

B.   Awarding Plaintiff: 1) the profits of Defendants realized as a result of the copyright infringement, false advertising, unfair competition, unjust enrichment, and /or its deceptive practices, or in the Court's discretion, such sum as the Court finds to be just; 2) damages sustained by Plaintiff, and 3) costs of this action.

C.   Awarding Plaintiff statutory damages and attorney's fees pursuant to 17 U.S.C. §§ 504-505;

D.   Awarding Plaintiff treble damages or profits and reasonable attorney fees pursuant to 15 U.S.C. § 1117 (a-b);

E.   Awarding Plaintiff punitive damages in an amount to be determined;

F.   Awarding Plaintiff prejudgment and post-judgment interest on any monetary award in this action;

G.   Awarding Plaintiff reasonable attorney fees;

H.   Permanently enjoining Defendants from any further use of the Copyrighted Works without the authorization and consent of Plaintiff.

I.   The asserted registrations of Defendants are invalid and should be canceled, together with an order that commands Defendant ACP and Defendant Sega, as the holder of the certificates, to request the Copyright Office to cancel said registrations.

J.   Enjoining and prohibiting Defendants from seeking to obtain copyright registrations for materials created by Plaintiff's predecessor and now owned by Plaintiff and ordering Defendants from using any of Plaintiff's Copyright Registrations in any manner without Plaintiff's prior written consent

K.   Granting such other and further relief as this Count deems just and proper.

Dated: New York, New York

        November 7, 2016

                        Law Offices of Neil Burstein


                        By:   _____s/Neil Burstein_____
                         signed /nab/

                        63 Winterberry Circle
                         Cross River, NY 10518

Phone: 914-977-3467
Email: nabesq1@gmail.com

Attorney Bar Code: 124098

ATTORNEY FOR PLAINTIFF


**JURY TRIAL DEMAND**

Pursuant to Rule 28 (b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: New York, NY

     November 7, 2016


     Law Offices of Neil Burstein


     By: /nab/

      Neil A. Burstein


**CERTIFICATE OF ELECTRONIC FILING**


I hereby certify that on November 7, 2016, the foregoing Amended Complaint was filed electronically. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing via the Court's system.


     _____ s/Neil Burstein _____

c:\ACP_Litigation_Amended_Complaint_ACP_Sega-revised_5.12