**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____X

                                    x

NARRATIVE ARK ENTERTAINMENT LLC,   x

                                    x     Case No.: CV 16-6109-VB

         Plaintiff,        x

     v.                         x
                                    x

                                    x     **Electronically Filed**

ARCHIE COMIC PUBLICATIONS, INC. and   x

SEGA OF AMERICA, INC.              x

         Defendants.       x

_____X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 12 MOTION TO DISMISS

Neil A. Burstein, Esq.
Law Offices of Neil Burstein
63 Winterberry Circle
Cross River, NY 10518
914 977 3467

Counsel for Plaintiff

January 3, 2017

## **TABLE OF CONTENTS**

CASES AND AUTHORITIES……………………………………………………3-4

INTRODUCTION AND STANDARDS……………………………………………… … 5

STATEMENT OF CASE……… ..................................................................................5

FACTUAL BACKGROUND.........................................................................................10

ARGUMENT......................................................................................................12

    SEGA'S MOTION TO DISMISS FOR LACK OF JURISDICTION SHOULD BE DENIED

I      Sega is Subject to New York Long Arm Jurisdiction ……………………………… …13

II    Sega Transacted Business in New York Under New York CPLR § 302 (a) (1)

      By Supplying Goods and Services to Archie in New York ………………… 13

III.    Sega is Subject to Jurisdiction Under New York CPLR § 302 (a) (1) By Transacting

      Business In New York. ………………………………………………….. … 14

IV.    Sega Has Committed a tortious act causing Injury in New York………………… 16

V.    Sega Exercised Extensive Supervision and Control Over Archie ……………….... 19

VI.    Archie Was Sega's Agent in New York ………………………………………... 19

VII.    Sega's Supporting Declaration of Suai is Critically Deficient…………………….. 19

VIII.    In the Interests of Justice Plaintiff Should be Allowed the Opportunity to Conduct

      Jurisdictional Discovery ………………………………………………...20

IX.    The Exercise of Jurisdiction Over Sega Comports with Due Process ………………21

CONCLUSION …………………………………………………………………23

CERTIFICATE OF SERVICE……………………………………………………… 24

## **TABLE OF CASES**

Cases                                                                                                    Pages

*Porina v. Marward Shipping Co.,* 521 F.3d 122, 126 (2nd Cir. 2008)……………………………..5

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2010)………………………………5

*S. New England Tel. Co. v. Global NAP Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)………………....5

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996)……. …….. …11

*Gucci Am., Inc. v. Frontline Processing Corp.,* 721 F. Supp 2d 228,
        240 (S.D.N.Y. 2010) …………………………………………………………………..11,14,17,18

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 575 (2d Cir. 1996)……. ……18

*PDK Labs, Inc. v. Friedlander*, 103 F. 3d 1105, 1108 (2d Cir. 2010)………….. ………………...11

*Bank Brussels*, 305 F. 3d at 124 ……………………………………………………………………11

*Toys "R" Us, Inc. v. Setp Two S.A.,* 318 F. 3d 446, 457 (3d Cir. 2003)…………………………11

*Alan Lupton Associates, Inc. v. Northeast Plastics, Inc.* (4 Dept. 1984) 105 A.D.
        2d 3, 482 N.Y.S. 2d 647……………………………………………… ………………7, 12

*Deutsche Bank Securities v. Montana Bd. Of Investments,* , 7 N.Y.3d 65, 850 N.E.
        2d 1140, 818 N.Y.S. 164 ……………………………………………………… 7, 13

*Parke-Bernet Galleries v. Franklin*, 26 N.Y. 2d 13 (1970)………………………………………..7

*Argonaut Ins. Co. v. Occidental Petroleum Corp*., 1980, 106 Misc. 2d 4, 430
        N.Y.S. 2d 982 ……………………………………………………………………… 12

*Fischbarg v. Douceet*, 832 N.Y.S. 2d 164, 167-169 (App Div 2007)…………………………... 13

*Chloé v. Queen Bee of Beverly Hills, LLC*, 09-3361-cv (2d Cir. Aug. 5, 2010) ….. …………… 14

*L.F. Rothschild, Unterberg, Towbin v. Thompson*, 433 N.Y.S. 2d 6, 7 (App. Div. 1980) … …….13

*Black River Assocs v. Newman*, 637 N.Y.S. 2d 880 (App. Div. 1996) …………………………. 13

*Penguin Group (USA) Inc. v. American Budda, 640 F. 3d 497 (2d Cir. N.Y. 2011)* ……………..14

*McGraw-Hill Cos. V. Ingenium Tchs. Corp*. 375 F. Supp. 2d 252, 256
        (S.D.N.Y. 2005) ………………………………………………… ……………………14

*American Network v. Access Am./Connect Atlant*a, 975 F. Supp 494, 497 (S.D.N.Y. 1997) ….. 14, 15

*Contrast Fantis*, 49 N.Y. 2d at 326-27 & n.4…………………………………………………..15

*Darienzo v. Wise Shoe Stores, Inc.,* 74 A.d. 2d 342, 346, 427 N.Y.S. 2d 831, 498 833 (2d
        Dept. 1980) ……………………………………………………………………… 15

*Burger King Corp v. Rudzewicz,* 471 U.S. 462 475 (1985)………………………………………. 17

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13 (1978)……………………………..17

*Easton v. Dorchester Dev., Inc.,* 692 F. 2d 727, 731 (11th Cir. 1982)……………………………..17

*Kernan,* 175 F.3d at 242………………………………………………………………...............17

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 575 (2d Cir. 1996)….18

## AUTHORITIES

<u>Cite</u>                                                                                                     <u>Page</u>

    Fed. R. Civ P. 12 (b) (2)  ………………………………………..5, 11

    N.Y.C.P.L.R. § 302 (a) (1)  .. ………………………………….. 6,7,8,11,12,15, 18

    N.Y.C.P.L.R. § 302 (a) (2)  ……… …………………………….. 6,8,13, 18

    N.Y.C.P.L.R. § 302 (a) (3) (i) & (ii)……………………………..8,13, 18

    17 U.S. C.  501………………………………………………….10

    Fed. R. Civ. P. 4 (3)  ……………………………………….......  10

## INTRODUCTION AND STANDARDS

Plaintiff Narrative Ark Entertainment LLC ("Plaintiff") respectfully submits this Memorandum of Law in opposition to the motion filed by Defendant Sega of America, Inc. to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12 (b) (2) or for a more definitive statement under Fed. Civ. P. 12 (c).

When a District Court rules on a Fed.R.Civ.P.12 (b) (2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Porina v. Marward Shipping Co.,* 521 F.3d 122, 126 (2nd Cir. 2008).   For the reasons enumerated below, Plaintiff has more than satisfied that showing and Sega's motion should be denied in all respects.

Each of the causes of action set forth in the Amended Complaint sets forth sufficient allegations to support jurisdiction over Sega and thus satisfying Fed R. Civ. P. 12 (b) (2). In making the prima facie determination, New York courts must consider the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in its favor.  *S. New England Tel. Co. v. Global NAP Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). The factual allegations of the complaint along with any supporting declarations constitute a specific averment of facts sufficient to support a finding of personal jurisdiction. This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2010).

## STATEMENT OF CASE

Plaintiff commenced this action against Archie Comic Publications, Inc. ("Archie") and Sega of America, Inc. ("Sega," collectively the "Defendants") seeking redress for copyright infringement, violations of the Lanham Act, unfair competition and other causes of action.  Each of the causes of action set forth in the Amended Complaint sets forth enough sufficient allegations to support jurisdiction over Sega and thus satisfy both Fed. R. Civ. P. 12  (b) (2) and (c).

Sega purposefully availed itself of the privilege of conducting activities in New York, supplied goods and services within New York, otherwise transacted business within the state and committed tortious acts causing injury in New York. Moreover, and contrary to the statements in Sega's supporting declaration, Sega was not only an active participant in supervising and directing the activities of New York based Archie but also over the freelance workers engaged by Archie to create the product licensed by Sega. *See*, Declaration of Scott D. Fulop in Support of Plaintiff's Opposition to Sega's Motion to Dismiss ("Fulop Decl."), *filed concurrently herewith*, at ¶¶ 10-15.  Such supervising activities included regular weekly and sometimes daily communication with Sega staff, and also meetings in New York. Fulop Decl. ¶¶ 8-10.

It is undisputed that Sega contracted to supply to Archie in New York the intellectual property which is the gravamen of this action pursuant to a merchandising/licensing agreement. Amended Complaint ¶ 12, *see also* Declaration of Yusuke Suai in Support of Sega's Motion to Dismiss ("Suai Decl."). Such action satisfies the jurisdictional prong under CPLR 302 which provides for personal jurisdiction where defendant, in person or through an agent "…contracts to supply goods or services in the state." CPLR § 302 (a) (1).  Sega also transacted business within New York satisfying the "transacts any business" prong of the statute as well be further enumerated below.

Sega is also subject to jurisdiction in this district as the result of the commission of a tortious act (copyright and other infringements) causing injury to Plaintiff in New York under CPLR § 302 (a) (2) and (3). Pursuant to the merchandising/ licensing agreement with Archie, Sega caused or contributed to the sale of the infringing product in New York and elsewhere. Under the terms of said agreement, Sega was directly responsible for supervising and approving the licensed product. *See*, Exhibit A to Suai Decl. ¶ 6 (a) – (k).

Sega knew or should have reasonably expected that its actions would have consequences in this state given that publisher Archie was located in New York and sales would occur within and without the state.  That Sega derives substantial revenue from the sales of the infringing publications in New York, as well as elsewhere, is evidenced by the minimum royalty provisions and stipulated advances provided under the terms of the merchandising/licensing agreement. Exhibit A to Suai Decl., ¶ 8 & 9 of Merchandising Schedule. Given that Plaintiff and its intellectual property are based in New York, it is indisputable that the injury is felt within the state regardless of where the infringement took place. Exhibits D and E of the Amended Complaint lists hundreds of known instances of infringing publications sold and advertised by Sega and Archie. Exhibit F of the Amended Complaint lists the various copyright registrations wrongfully filed by Sega and Archie covering works owned, in part, by Plaintiff.

Sega nevertheless maintains that its only "apparent" link to this lawsuit is the contractual relationship between Sega and Archie. Even assuming, arguendo that this is true, the very terms of said agreement provide a basis for jurisdiction in New York under "transacts any business within the state" and/or "contracts anywhere to supply goods or services in the state" prongs of CPLR 302 (a) (1).

Sega points to the choice of law and venue provisions favoring California as somehow undermining the existence of personal jurisdiction in New York. Not surprisingly, Sega neglects to mention the more significant contract provisions supporting jurisdiction in New York including: (i) right to audit books and records in New York, (ii) quality control by Sega over the services rendered in New York, (iii) Sega's indemnification obligations within New York, (iv) appointment of agent in New York for infringement actions, and (v) use of the licensed property inuring to Sega's benefit. *See* Exhibit A to Suai Decl. ¶ ¶ 4, 6, 9, 12 & 13.

It is well established that courts look to the venue where the contract was to be performed, in this case New York, as a critical factor in determining jurisdiction. "Generally, the place where a contract is performed is more important for purposes of jurisdiction than the place where the contract is executed." See, *Alan Lupton Associates, Inc. v. Northeast Plastics, Inc*. (4 Dept. 1984) 105 A.D. 2d 3, 482 N.Y.S. 2d 647. Other contract provisions tipping the scale in favor of jurisdiction include: audit rights in New York, quality control and supervision by Sega over the licensed product, indemnification of the New York party, and the appointment of agent in New York to commence lawsuits based upon the licensed property. It was also Archie's customary business practice to sign contracts in New York. *See,* Fulop Decl. ¶ 7 These factors provide evidence of purposeful availment within the forum by Sega and weigh heavily in favor of jurisdiction. Nor was it necessary for Sega to be physically present in the forum for the court to exercise jurisdiction. As recently noted by the New York Court of Appeals,  "…jurisdiction is proper even though defendant never enters New York, so long as defendants activities here were purposeful…"  *Deutsche Bank Securities v. Montana Bd. Of Investments*, 7 N.Y.3d 65, 850 N.E. 2d 1140, 818 N.Y.S. 164.  One need not be physically present "…in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long range

8

communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State." *Parke-Bernet Galleries v. Franklin*, 26 N.Y. 2d 13 (1970).

The relationship between Sega and Archie in New York is far more extensive than Sega would have the Court believe. Sega exercised extensive and continuous supervision and control over both Archie and the freelance workers engaged in creating the licensed product, with Sega licensing managers even attending meetings in New York on several occasions. *See*, Fulop Decl. ¶ ¶ 1-15. Further, and at various times, Sega was also in charge of foreign language Sonic comic book printing and distribution of the licensed product. *See*, Fulop Decl. ¶ 20. In furtherance of their joint business relationship, Archie also acted as Sega's agent in New York. The indicia on the comic books and the various other publications produced pursuant to the terms of the merchandise/license agreement provides that "SONIC THE HEDGEHOG and all related characters and indicia are trademarks of Sega". The indicia goes on state that the Postmaster should send any address changes for SONIC THE HEDGEHOG c/o Archie Comic Publications which is located in New York. *See*, Exhibit A In Support of Plaintiff's Opposition to Sega's Motion to Dismiss, *filed concurrently herewith*.

Sega attempts to support its moving papers with the Suai Decl. and Exhibit A. Significantly, Ms. Suai's Declaration has no evidentiary value since she admits that Sega and Archie negotiated the agreement *over twenty years before she even began working at Sega*. Suai Decl. ¶ 9. Further, Ms. Suai *admits that she has no direct knowledge of the events* and can only speculate as to what the actual business relationship was between Sega and Archie at the time relevant to this litigation. *Id* at ¶ 9.

Based upon all of the aforesaid, it is clear that Sega not only transacted business in New York, but also supplied goods and services in New York, and is thereby subject to personal

jurisdiction under both prongs of CPLR § 302 (a) 1. There is also jurisdiction under CPLR § 302 (a) (2) & (3) (i) and (ii) because: (i) Sega knew or should have reasonably expected that the release of infringing publications under the merchandise/license agreement to have consequences in New York and (ii) Sega derives substantial revenue from both interstate and international commerce from such activities.

## **FACTUAL BACKGROUND**

Sega is a California Corporation which, among other properties, owns the "Sonic the Hedgehog" trademark, character and likeness, and publishes popular video games. Amended Complaint at ¶ 2. *See also* Declaration of Yusuke Suai at ¶ 4.

Archie is a New York Corporation located in New York and is engaged in the business of producing, selling and distributing comic books, graphic novels, digital and other publications in New York and throughout the United States. Amended Complaint ¶ ¶ 9-10, *See also*, Suai Decl. ¶ 4. Plaintiff is a New York corporation. Amended Complaint ¶ 3.

Beginning in 1992, Archie entered into a merchandising/license agreement with Sega to create and sell comic books and other publications based on some of Sega's classic characters, including "Sonic the Hedgehog." Amended Complaint at ¶ 12, *see also* Suai Decl. at ¶ ¶ 6-7. This agreement allowed Archie to develop and market comic books and other publications based on Sega characters and trademarks, under the supervision and control of Sega. *See*, Suai Decl. ¶ 6 and Exhibit A to Suai Decl. ¶ 6 (Notice, Quality Control & Samples). Sega received royalties and advances based on sales of the licensed works. Suai Decl. ¶ 9. The licensed territory covered the United States and certain foreign countries. Exhibit A to Suai Decl., page 2. ¶ 5 (Licensed Territory).

Plaintiff's principal, Scott Fulop, worked as a staff editor for Archie from August 1988 to May l991, again from February 1994 until January 1996, and as a freelancer from 1996 to 1998.  Amended Complaint ¶ ¶ 16-17.  As a freelancer, Mr. Fulop created and developed certain stories, characters and artwork for Archie. *Id* at ¶ 21.  Mr. Fulop filed for copyright registrations for a number of the works he created as a freelancer, and such registrations were granted by the U.S. Copyright Office. Amended Complaint at ¶ ¶ 37-39.

The allegations of Plaintiff's complaint concern conduct and actions by both Sega and Archie, and the affirmative actions alleged against Sega are set forth in numerous paragraphs. *See, for example,* Amended Complaint ¶ ¶ 12-15, 37, 49, 50, 54, 59, 61-68, 70-75, 77-81 and 85-88.  Archie has admitted Sega's participation, knowledge and consent to certain of the complained infringing actions.  See, Archie Amended Answer at ¶ ¶ 64 and 66. Defendants Sega and Archie did not have permission to use the copyrighted works of Plaintiff in reprints, digital and other formats and advertising sold pursuant to the licensing/merchandising agreement. Amended Complaint ¶ 50.  In addition to other infringing activities, Plaintiff has also alleged that Archie, with the knowledge and consent of Sega, infringed the copyrighted works of Plaintiff, by causing to be launched the "Official Archie Comic App" and new storefront, making available for sale various publications of Archie and Sega, including various stories and characters from the copyrighted works of Plaintiff in new digital versions and formats.  Amended Complaint ¶ ¶ 59-61.  Such new digital various and formats would have required Sega' participation and consent under the merchandise/license agreement. Exhibit A to Suai Declaration ¶ 6 (g) & (h).

Archie used freelance writers, artists and other creators in connection with producing the comic books and other publications under the merchandising/license agreement. Amended Complaint ¶ ¶ 18, 19 & 21. Many of these freelance writers, such as Ken Penders and Scott

Fulop, were located in New York.  Fulop Decl. ¶ 4. The merchandising/ licensing agreement

between Sega and Archie contemplated the use of freelance artists.  Exhibit A to Suai Decl.,

paragraph 8 (c) (iv) & (v).  Sega was also notified by the Copyright Office that Fulop and

Penders had filed copyright registrations for various works written as freelance writers/creators

for Archie. Amended Complaint ¶ ¶ 36 & 37.

The indicia on the comic books and other publications produced, distributed and sold in

New York (and elsewhere) pursuant to the license agreement provided the following notice:

"SONIC THE HEDGEHOG" and all related characters and indicia are trademarks of Sega." The

notice further provides that the "Postmaster should send any address changes for SONIC THE

HEDGEHOG c/o Archie Comic Publications" which is located in New York. The indicia also

set forth a copyright notice in the name of Sega, and including the words "All rights reserved.

Used with permission."  *See,* Exhibit A to Plaintiff Memorandum In Opposition.

There is no question that the allegations in the Amended Complaint sets forth specific and

numerous allegations against both Archie and Sega, and allege affirmative conduct by Sega

sufficient for jurisdictional purposes for all causes of action. The Fulop Decl. further supports

such claims. The acts alleged against Archie and Sega constitute continuing infringements. The

allegations in the complaint are sufficient to establish personal jurisdiction over Sega or at the

very least establish a prima facia case for such jurisdiction. Knowledge or intent to infringe is not

an element of a cause of action for copyright infringement. 17 U.S. C. 501.


**ARGUMENT**

SEGA'S MOTION TO DISMISS FOR LACK OF JURISDICTION SHOULD BE DENIED

I.     Sega is Subject to New York Long Arm Jurisdiction

A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state. Rule 4 (3), Federal Rules of Civil Procedure, *See also*, *Gucci Am., Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228, 240 (S.D.N.Y. 2010) quoting *PDK Labs, Inc. v. Friedlander*, 103 F. 3d 1105, 1108 (2d Cir. 2010). New York's personal jurisdiction rules are therefore applicable. If the court determines that the defendant is subject to personal jurisdiction under the law of the forum, it must then consider whether the exercise of that jurisdiction comports with the Due Process Clause of the Fourteen Amendment. *Bank Brussels*, 305 F. 3d at 124.

When a district court rules on a Fed.R.Civ.P.12 (b) (2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996). Further, it is well established that in deciding a motion to dismiss for lack of personal jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff. *Id.* Citing *Toys "R" Us, Inc. v. Setp Two. S.A.*, 318 F. 3d 446, 457 (3d Cir. 2003).

II.    Sega Transacted Business in New York Under New York CPLR § 302 (a) (1) By
       Supplying Goods and Services to Defendant Archie in New York.

A defendant may be subject to personal jurisdiction where it "transacts any business within the state" or "contracts anywhere to supply goods or services in the state. CPLR Section 302 (a) (1). Plaintiff  has specifically alleged, among other things, that Sega and Archie entered in a worldwide licensing relationship to produce, sell and distribute comic books, graphic novels,

digest magazines and other publications which feature Sega's popular "Sonic the Hedgehog" character, that such relationship continues to date, that Sega derives financial benefit including royalty payments from such sales, and that by virtue of said contractual relationship Sega is jointly responsible for the sale and distribution of the infringing works. Amended Complaint ¶ ¶ 12 -14 & 15. Exhibits D and E of the Amended Complaint lists hundreds of alleged copyright infringements. The contract between Sega and Archie, by its terms, was to be substantially performed in New York (where Archie was located), the forum where Plaintiff and other freelance writers working on creating the product resided, and New York was the state in which products under the license were to be primarily distributed and sold. Suai Decl. ¶ 6.

Thus, all of the elements of CPLR Section 302 (a) 1 have been unequivocally satisfied. Sega transacted business in New York and/or contracted to supply goods or services in the state is evidenced by the merchandising/licensing agreement between Sega and Archie. Exhibit A to Suai Decl. The terms of said agreement provide in pertinent part that Sega is to:  (i) supply the intellectual property upon which the licensed products are based, (ii) exercise extensive quality control and supervision over activities by publisher in New York, (iii) provide indemnification to Archie in New York, (iv) audit of Archie books and records in New York, (v) appointment of Archie to commence infringement actions and (vi)  use of the licensed property within New York inuring to Sega's benefit . *See,* Exhibit A to Suai Decl., paragraphs 1, 4, 6, 8 and 13. Further, the products sold under the merchandise/license agreement were to be sold in New York. Suai Decl. ¶ 6.

III.      Sega is Subject to Jurisdiction Under New York CPLR § 302 (a) (1) By Transacting Business In New York.

Ignoring the fact that the jurisdiction prong is satisfied by contracting to supply goods or services in New York, Sega seeks to evade jurisdiction by claiming that merely entering into a business deal with persons residing in New York is not enough to confer jurisdiction under the transacting business prong of the long arm statute. Sega maintains (without providing any credible evidence) that "as a matter of business practice, Sega usually negotiates its contracts by phone or email, and it would have likely signed the agreement in California. Suai Decl. ¶ 9. Tellingly, Ms. Suai admits that the contract was entered into long before she was employed by Sega. Further, she also admits that she has no direct knowledge of what the business practices were at the time the contract was made. *Id* at ¶ 9.  On the other hand, it is undisputed that Archie is based in New York and this is the forum where the contract was substantially performed. "Generally, the place where a contract is performed is more important for purposes of jurisdiction than the place where the contract is executed." See, *Alan Lupton Associates, Inc. v. Northeast Plastics, Inc*. (4 Dept. 1984) 105 A.D. 2d 3, 482 N.Y.S. 2d 647.  See also*, Argonaut Ins. Co. v. Occidental Petroleum Corp.,* 1980, 106 Misc. 2d 4, 430 N.Y.S. 2d 982 [finding that New York court has jurisdiction over party who enters into a contract outside New York which calls for performance of service in New York].  Moreover, Sega exercised extensive control over both Archie and the freelance workers engaged by it to create the licensed product, with Sega licensing managers even attending business meetings in New York on several occasions in furtherance of the Sega/Archie joint licensing/business venture.  Fulop Declaration ¶ 10.

Recent case law also makes clear that it is not necessary for the non-resident defendant to be physically present in New York for the court to exercise personal jurisdiction under CPRL 302 (a) (1).  In finding jurisdiction, the Court of Appeals held that the defendants' lack of physical presence in New York was entirely irrelevant. *Fischbarg v. Douceet*, 832 N.Y.S. 2d

164, 167-169 (App Div 2007), *see also Deutsche Bank Securities v. Montana Bd. Of Investments*, 7 N.Y.3d 65, 850 N.E. 2d 1140, 818 N.Y.S. 164.  The quality and nature of defendant's electronic contacts with the state was sufficient to confer jurisdiction. *Id* at 27-28. Similarly, the Appellate Division was held that 302 (a) (1) jurisdiction existed over a stocker's Alabama customer who placed orders via telephone and mail but never physically entered New York. *See*, *L.F. Rothschild, Unterberg, Towbin v. Thompson*, 433 N.Y.S. 2d 6, 7 (App. Div. 1980).  *In Otterbourg, Streindler, Huston & Rosen, P.C.*, the Appellate Division also held that defendant's communications via telephone and letter were sufficient to constitute a transaction of business under CPLR 302 (a) (1). 543 N.Y.S. 2d 978 (App. Div 1989), see also *Black River Assocs v. Newman*, 637 N.Y.S. 2d 880 (App. Div. 1996) (holding that a California defendant who contracted to purchase real property was subject to jurisdiction in New York even though he never entered the state but conducted negotiations by telephone). Accordingly, even assuming arguendo, that Sega's conduct and negotiations were, as speculated by Ms. Suai, generally conducted by phone or email (Suai Decl. at ¶ 9), such conduct is sufficient for jurisdictional purposes.

With the evolution of technology, physical presence alone should not determine whether one has purposely availed itself of a state's rights and benefits for jurisdictional purposes under the long-arm statute. *Fischbarg v. Doucet* (1 Dept. 2007) 38 A.D.3d 270, 832 N.Y.S.2d 164, affirmed 9 N.Y.3d 375, 849 N.Y.S.2d 501, 880 N.E.2d 22. Courts 13.3(4)

IV.     Sega has committed a tortious act causing injury within New York.

New York's long arm statute provides for jurisdiction over a non-domiciliary where defendant, in person or through an agent, commits a tortious act within or without the state

causing injury to person or property within the state… if he…(ii) expects or should reasonably expect the act to have consequences in the state or derives substantial revenues from interstate or international commerce." CPLR § 302 (a) 2 & (3).   A recent holding by the United States Circuit Court for the Second Circuit suggests that even the sale of a single infringing good and its shipment into New York may constitute sufficient grounds for a New York court to exercise personal jurisdiction over an infringer. *Chloé v. Queen Bee of Beverly Hills, LLC*, 09-3361-cv (2d Cir. Aug. 5, 2010). In the instant case, there are hundreds of alleged infringements causing injury to Plaintiff in New York. *See,* Exhibits D, E, and F of Amended Complaint.

Each of the elements of the long arm statute is unequivocally satisfied here. Plaintiff has alleged that Sega has committed numerous tortious acts, including infringing the copyrighted works of Plaintiff. Amended Complaint   ¶ ¶ 59, 61,77-80, 87 & 88. The Court of Appeals of New York has determined that for the purposes of determining long-arm jurisdiction, the location of the copyright holder, in this case New York, is the situs of the injury.  *Penguin Group (USA) Inc. v. American Budda, 640 F. 3d 497 (2d Cir. N.Y. 2011).*  The tort of copyright infringement "causes injury in the state where the allegedly infringed intellectual property is held." *McGraw-Hill Cos. v. Ingenium Tchs. Corp*., 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) (citing *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp*., No. 04 Civ. 5002 (JSR), 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y. Feb 14, 2005). Other intellectual property cases have held, "injury within a state includes harm to a business in the New York market in the form of lost sales or customers."  *Gucci Am, Inc*., 721 F. Supp. 2d at 241-42, quoting *Citigroup Inc. v. City Holding Co*., 97 F. Supp 2d 549, 568 (S.D.N.Y 2000). Thus, there is little question that the injury caused by the infringement is felt in New York

Sega was aware of the infringing activity and reasonably should have expected that the infringement would have consequences in New York. Amended Complaint 59, 61. Indeed, the merchandise/license agreement contemplated the possibility of infringement actions and provides for indemnifications in such circumstances. Exhibit A to Suai, ¶ 13 (Indemnification). Thus, Sega expected that its acts might have consequences in New York.  It is also clear that the product would be sold in New York as stated by Suai noting "…products that Archie sells in New York or elsewhere under the Merchandising Agreement".  Suai Decl.¶ 6, line 6.

The analysis of this issue is objective in nature, and the foreseeable requirement, "relates to the forum consequences generally, and not to the specific event which produced injury within the state." *American Network v. Access Am./Connect Atlant*a, 975 F. Supp 494, 497 (S.D.N.Y. 1997). In interpreting the foreseeability requirement, New York Courts have focused on whether there were facts known to the non-domiciliary that should have alerted it that its product would enter the New York market.  *Contrast Fantis*, 49 N.Y. 2d at 326-27 & n.4.  See also *Darienzo v. Wise Shoe Stores, Inc.*, 74 A.D. 2d 342, 346, 427 N.Y.S. 2d 831, 498 833 (2d Dept. 1980) holding a non-domiciliary shoe manufacturer should have expected New York consequences from its manufacture of shoes because it was aware that a Tennessee distributor to which its shoes were shipped would distribute them to New York retailers. In the instant case, it was not only foreseeable the product would enter the New York market but stipulated by contract.

Here, the terms of Sega's agreement with Archie provided that the licensed product to be sold throughout the United States and in New York. *See*, Suai Declaration ¶ 6, line 6. Accordingly, there can be no question that the foreseeability requirement has been satisfied. The instant case is similar to that in *American Network*, wherein defendant argued that plaintiff had not alleged facts showing that defendant expected or should reasonably have expected its acts to

18

have consequences in New York sufficient to establish jurisdiction under CPLR 302 (a) 3 (ii). The U.S. District Court for the Southern District, however, sustained jurisdiction finding that it was reasonably foreseeable to defendant that its actions would have New York consequences. *American Network v. Access Am./Connect Atlant*a, 975 F. Supp 494, 497 (S.D.N.Y. 1997).

V.     Sega Exercised Extensive Supervision and Control Over Archie

Sega exercised extensive supervision and quality control over Archie and the freelance workers engaged by Archie to create the product licensed by Sega. *See*, Fulop Decl.¶  4, 8-15. Such continuing supervision and control was also required under the terms of the merchandise/licensing agreement.   *See,* Exhibit A to Suai Declaration ¶ 6.  For example, new material appearing in the licensed product was subject to an extensive review and approval process by Sega. Exhibit A to Suai Decl.¶ 6 (g). Advertising and promotional materials for the licensed products needed to be submitted to Sega for approval. Exhibit A to Suai Declaration ¶ 6 (h). This resulted in Sega having an ongoing and continuous relationship with Archie in New York.

VI.     Archie was Sega's Agent in New York

Not only did Sega transact business in New York under CPLR Section 302 (a) (1), but Archie also acted as Sega's agent in New York for various joint business purposes.  The indicia on the comic books and other publications produced pursuant to the terms of the merchandise/license agreement provides that "SONIC THE HEDGEHOG and all related characters and indicia are trademarks of Sega".  The indicia goes on state that the Postmaster should send any address changes for SONIC THE HEDGEHOG c/o Archie Comic Publications. Archie Comic Publications is located in New York.

VII.    Sega's Supporting Declaration of Suai is Critically Deficient

Sega seeks to support its moving papers with the Suai Decl. and Exhibit A. Significantly, Ms. Suai's Declaration has little or no evidentiary value since she admits that Sega and Archie negotiated the agreement *over twenty years before she even began working at Sega*. Suai Decl.   ¶ 9.  Further, Suai *admits that she has no direct knowledge of the events* and can only speculate as to what the actual business relationship was between Sega and Archie at the time relevant to this litigation. *Id* at ¶ 9.

VIII.   In the Interests of Justice Plaintiff Should be Allowed the Opportunity to Conduct Jurisdictional Discovery

Sega has introduced into evidence as Exhibit A to its motion papers the purported merchandising/licensing agreement between Archie and Sega. Even a cursory review of said agreement evidences many unexplained irregularities, such as numerous white outs, different type faces, missing spaces and unsigned insertions, which Plaintiff in the interests of fairness should be allowed the right to inquiry about. Further, said agreement also provides that Sega and Archie would endeavor to reach certain side agreements relating thereto. *See*, Exhibit A to Suai Decl. ¶ 8 (v). Such side agreements are believed by Plaintiff to be relevant to the jurisdiction issue.

While Plaintiff believes the arguments already presented herein are more than sufficient for the Court to dismiss Sega's motion, in view of the contract introduced by Sega, Plaintiff has reason to believe that jurisdictional discovery would yield additional information that would further aid the Plaintiff in fully responding to Sega's Motion to Dismiss. It is well settled that issues of jurisdiction are proper for discovery. See *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S.

340, 351 n. 13 (1978). Plaintiff is entitled to elicit material through discovery before a claim may

be dismissed for lack of jurisdiction. *Easton v. Dorchester Dev., Inc.*, 692 F. 2d 727, 731 (11th

Cir. 1982).

IX.    <u>The Exercise of Jurisdiction Over Sega Comports with Due Process</u>

In addition to satisfying the elements required by statute pursuant to the New York

CPLR, constitutional due process requirements are also satisfied under the facts of this case.

"The due process inquiry contains two parts: the minimum contacts inquiry and the

reasonableness inquiry." *Gucci Am., Inc.,* 721 F. Supp. 2d at 244, citing *Parker Waichman,* 2010

U.S. Dist. LEXIS 47957; *Kernan,175* F.3d at 242.

(i)    Minimum contacts

The minimum contacts component is satisfied by demonstrating defendant's contacts with

the state, and then demonstrating that the defendant has purposely availed itself of the privilege

of doing business here. *Kernan,* 175 F.3d at 242. In this case, Sega has clearly availed itself of

the privileges of doing business in New York. Moreover, the dispute alleged herein grew directly

out of the contract which had a substantial connection to New York. Specifically, the contract

between Sega and Archie provided, that Sega supplied goods to publisher Archie in New York

(namely the intellectual property upon which the licensed products were based). Said contract

further provided for continuous and extensive quality control by Sega over the activities of

Archie in New York regarding the licensed products produced. Moreover, the licensed products

were sold in New York (Suai Decl. ¶ 6) and Sega derived substantial revenues from such sales.

Exhibit A to *Suai* Decl. ¶ ¶ 8, 9 of Merchandising Schedule.  In addition, Sega utilized Archie as

its agent in New York and comic books and other publications produced thereunder was required

to carry Sega indicia and notices.  Clearly, Sega has purposely availed itself of the benefits of doing business in New York, and satisfies the minimum contact requirement. *Gucci Am., Inc.,* 721 F. Supp. 2d at 244.  See also, *Burger King Corp v. Rudzewicz*, 471 U.S. 462 475 (1985). Even though the defendant did not have offices in the forum, nor had he ever visited the state, the Court pointed out that the dispute, as here, "grew directly out of a contract which had a substantial connection with that state." *Id*, 471 U.S. at 479

(ii)     Reasonableness

The reasonableness standard is also satisfied in that Plaintiff has demonstrated that the exercise of jurisdiction "comports with traditional notions of fair play and substantial justice." *Gucci Am., Inc.,* 721 F. Supp. 2d at 245-46, *quoting, Kernan, 175* F.3d at 243. Five factors are considered to determine the reasonableness of jurisdiction: (1) the burden of jurisdiction on the defendant; (2) the interest of the forum in adjudicating the case; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of the dispute; and (5) the shared interests of the states in furthering "social and substantive policies." *Gucci Am., Inc.,* 721 F. Supp. 2d at 246, *citing, Kernan,* 175 F.3d at 243.

Critically, "[w]here the other elements for jurisdiction have been met, dismissals on reasonableness grounds should be `few and far between." *Gucci Am., Inc.,* 721 F. Supp. 2d at 244, citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 575 (2d Cir. 1996). It is clear based upon the facts which have been alleged that jurisdiction is reasonable under the current circumstances. The burden on Sega is neither extreme nor unexpected, Plaintiff has an interest in vindicating its copyright rights where it resides and where it owns the registrations, and there is an overall "reasonableness" in requiring a party that knowingly injects infringing

publications into interstate commerce to defend itself where those publications are sold and the injury occurs. Given the low threshold for demonstrating reasonableness in the due process context, it is clear that this second requirement is satisfied as well. Accordingly, both due process requirements are satisfied by the facts of the instant case.

## CONCLUSION

For all the foregoing reasons, it is readily apparent that Sega is subject to jurisdiction under CPLR 302 (a) (1), 2 and 3 as alleged in the Amended Complaint and that Plaintiff has established, at the very least, a prima facie showing sufficient to defeat Sega's motion to dismiss.

Moreover, notwithstanding Sega's claims to the contrary, Plaintiff has alleged numerous specific facts about Sega's infringing conduct. Accordingly, Sega's request for a more definite statement should also be dismissed.

Accordingly, Plaintiff respectfully requests that this Court issue an order denying the motion to dismiss or filed by Defendant Sega and its request for a more definitive statement, and awarding Plaintiff Narrative Ark Entertainment, Inc. the costs and fees, including attorneys' fees, incurred in connection with this motion, together with such other, further and different relief as this Court deems just and proper.

Dated: January 3, 2017

Respectfully submitted,

Law Offices of Neil Burstein

By:    s/Neil Burstein
    signed /nab/

63 Winterberry Circle
Cross River, NY 10518

23

Phone: 914-977-3467
Email: nabesq1@gmail.com

Attorney Bar Code: 124098

ATTORNEY FOR PLAINTIFF


## CERTIFICATE OF ELECTRONIC FILING


I hereby certify that on January 3, 2017, the foregoing Memorandum of Law In Opposition To Defendant Sega's Rule 12 Motion to Dismiss was filed electronically. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing via the Court's system.


_____ s/Neil Burstein _____


c:\ACP_Litigation_Pleadings_Narrative_mem_resonse_Sega_motion_dismiss_final_5