## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____X

NARRATIVE ARK ENTERTAINMENT LLC,

                                              Case No.: CV 16-6109-VB

        *Plaintiff,*

     v.

ARCHIE COMIC PUBLICATIONS, INC.

and SEGA OF AMERICA, INC.

        *Defendants*

_____X

ARCHIE COMIC PUBLICATIONS, INC.,                        **Electronically Filed**

      *Third Party Plaintiff*

     v.

NARRATIVE ARK ENTERTAINMENT LLC,

        *Counterclaim Defendant*

SCOTT D. FULOP,

        *Third Party Defendant*

_____X

**THIRD PARTY DEFENDANT SCOTT D. FULOP'S REPLY BRIEF IN FURTHER
SUPPORT OF THE MOTION TO STRIKE THE AMENDED THIRD PARTY
COMPLAINT OF ARCHIE COMIC PUBLICATIONS, INC.**

1

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ……………….………………………………….……..5

LAW AND ARGUMENT......................................................................6

POINT I.        APPLICABLE LEGAL STANDARDS…………………………….....6-7

          A.  Motion to Strike

          B.  Motion to Dismiss

POINT II.  ACP CONTINUES TO BE IN DEFAULT ………………………………..8

          A.  The Amended Third Party Complaint Was Not Timely Filed…………….....8

          B. The Amended Third Party Complaint Fails to Satisfy the Requirements
              Necessary to Implead A Party Required Under Rule 14………..……….. 10

POINT III.        ACP HAS NO STANDING TO ASSERT SLANDER OF TITLE…...…………12

          A.  ACP Does Never Owned the Copyright Registrations……………..……….12
              (i)        Fulop Has Legal Title
              (ii)        ACP Has No Colorable Claim
          B.  Slander Claim Facially Defective For Failing To Allege Malice..…………14
          C.  The Communications Were Privileged……………..……………………..16

CONCLUSION ……………………………………………………………………...17

CERTIFICATE OF SERVICE…………………………………………………....18

## <u>TABLE OF AUTHORITIES</u>

**<u>Statutes & Rules:</u>**

Fed. R. Civ P. 14 (a) (1)  …………………………………………………5,8,10,11

Fed. R. Civ P. 14 (a) (4)  ……………………………………………………7

Fed. R. Civ. P. 12……………………………………………………………7

17 USC………………………………………………………………………....8

17 USC § 410 (c)……………………………………………………………12,13

17 USC § 102………………………………………………………………..13

17 USC § 204 (a)……………………………………………………………. .13

**<u>Other Authorities:</u>**

Federal Practice & Procedure § 1442 (2d ed. 1994 & sup 2009)……………………………7

Robert D. Sack, 13 Sack on Defamation §§ 13.1.4.1, 13.1.4.5 (2006)………………………14

New York Civil Rights Law § 74……………………………………………………16

**<u>Cases:</u>**

*Catskill Mountains Chapter of Trout Unlimited Inc. v. City of New York,* 207 F.Supp. 2d 3, 4-5 (N.D.N.Y.2002)……………………………. …………………………………………5,7,9,10

*Consolidated Rail Corp v. Mitz,* 115 F.R.D. 216, 218 (S.D.N.Y. 1987)………………………..7

*Shannon*, 2016 WL 6768497 at *1……………………………………………………7

*Ashcroft*, 556 U.S. at 678……………………………………………………………..7

*Fashion-in-Prints, Inc. v. Salon, Marrow & Dyckman,* L.L.P., 199 U.S. Dist. LEXIS 106177, 97 CIV 340, 199 WL 5000149………………………………………………………9

*S. E. Mortgage Co. v. Mullins*, 514 F. 2d 747 (5th Cir. 1975)…………………………………10

*Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F. 2d 29  (1984 U.S. App. LEX22024)……………………………………………………………………10,11

*Joyner Wholesale Co.*, 736 F. 2d 29….……………………………………………………11

*Cf. Old Republic Ins. Co. v. Concast*, Inc., 99 F.R.D. 566, 568-69 (S.D.N.Y. 1983)…………11

*Index Fund, Inc. v. Hagopian,* 417 F. Supp 738 (S.D.N.Y. 1976) (Tenney, J.)……………..…12

*Konisberg Int'l, Inc v. Rice*. 16 F.3d 355, 357 (9th Cir. 1994)…………………………………13

*Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04 Civ. 6017, 2007 WL 2781246, *11 (S.D.N.Y. Sept 24, 2007)

*Modulars by Design, Inc. v. DBJ Devel. Corp.*, 174 A.D. 2d 885, 571 N.Y. S. 2d 168, 170 (App. Div. 1991)……………………………………………………………………………..14

*Fink v. Shawangunk Conservatory Inc.*, 15 A.D. 3d 754, 790 N.Y.S. 2d 249, 251 (App Div 2005)……………………………………………………………………………………………14

*Terrace Hotel Co. v. State*, 19 N.Y. 2d 526, 227 N.E. 2d 846, 849-50, 281 N.Y.S. 2d 34 (N.Y.1967)……………………………………………………………………………….…..15

*Republic Nat'l Bank,* 651 F.2d 825, 828 (2d Cir. 1981)………………………………………14

*John W. Lovell Co v. Houghton,* 116 N.Y. 520, N.E. 1066…………………………………………15

*Donofrio-Ferrezza v. Nier*, No. 04-CV-1162, 2005 U.S. Dist. LEXIS 21103, 2005 WL 2312477, at *7 (S.D.N.Y. Sept. 21, 2005)……………………………………………………………15

*Shapiro v. Health Ins. Plan of Greater N.Y.*, 7 N.Y.2d 56, 163 N.E.2d 333, 338, 194 N.Y.S.2d 509 (N.Y. 1959)…………………………………………………………………………………15

*Liberman v. Gelstein,* 80 N.Y. 2d 429, 605 N.E.2d 344, 349…………………………………16

*Liberman*, 605 N.E. 2d at 349………………………………………………………………..16

*McSherry v. Nat'l Blue Print Div. of Nat'l Reprographics, Inc.*, No. 81-CV-5182, 1982 U.S. Dist. LEXIS 17044 at *1-2 (S.D.N.Y. Dec 27, 1982)………………………………………….…16

## **PRELIMINARY STATEMENT**

Third Party Defendant Scott D. Fulop ("Fulop") respectfully submits this Reply Brief in further support of the motion to strike and dismiss the Amended Third Party Complaint of Defendant Archie Comic Publications Inc. ("ACP").

ACP's opposition papers fail to provide any reasonable explanation for the default in not timely filing the Third Party Complaint or seeking leave of this Court by motion before filing the proposed third party complaint as required by Rule 14 (a) (1) of the Federal Rules of Civil Procedure. Here, leave of Court was never obtained by ACP and the Third Party Complaint was filed long after the allowed time period.

Despite having several months to do so, ACP continues to be in default.  The only reason provided is that ACP was granted leave to file the Amended Third Party Complaint *sua sponte*. While it is true that such leave was granted, it is ludicrous to suggest that this *ipso facto* cures the defaults and deficiencies in ACP's pleadings. It merely provided an opportunity for ACP to cure any correctable deficiencies (which it again failed to do despite having numerous opportunities to do so). The only case that counsel for ACP could locate which even remotely supports its position is *Catskill Mountains Chapter of Trout Unlimited Inc. v. City of New York,* 207 F.Supp. 2d 3, 4-5 (N.D.N.Y.2002). However, this case is distinguishable because prior permission of the court was obtained. Moreover, the third party complaint was dismissed as being improper under Rule 14 for reasons further validating Fulop's position.

Put simply, impleader here is not proper and should not be allowed for the following reasons:

-Failure to comply with time limitations of Rule 14 (a)

-Impleader is only available to join a nonparty who are liable to defendant for all or part of plaintiff's claim

-Impleader would cause undue delay to the main action

-Impleader would further complicate an already complicated main action

-Impleader would be prejudicial to Plaintiff and Third Party Defendant

Beyond the deliberate failure to satisfy the jurisdictional and time requirements of Rule 14, ACP's slander of title claim is legally insufficient for many reasons:

- ACP does not own the copyrights.

-No defamatory communications were ever made.

-Any communications made were privileged.

-ACP failed to allege malice as required under New York law

-ACP commenced the third party action in bad faith.

Unfortunately, this is a classic case of a big corporation seeking to bully an individual freelance worker, who is only seeking just compensation for his creative works, by prosecuting meritless claims against him and forcing him to incur additional legal expense and delay.

## LAW AND ARGUMENT

## I. THE APPLICABLE LEGAL STANDARD

### A. Motion to Strike

Third party practice is governed by Rule 14 of the Federal Rules of Civil Procedure. Motions to strike third-party complaints are allowed by Rule 14 (a) (4) which states that any

party may move to strike the third party complaint. The right to implead is not automatic, and the decision whether or not to permit impleader rests within the sound discretion of the court. *Consolidated Rail Corp v. Mitz*, 115 F.R.D. 216, 218 (S.D.N.Y. 1987).  Nevertheless, impleader is available under Rule 14 "only against persons who are or may be liable to defendant for part or all of the plaintiff's claim; it cannot be used as a way of combining all controversies having a comer relationship into one action."  *Catskill Mts. Chptr. Of Trout Unlimited, Inc. v. City of New York*, 207 F. Supp 2d 3.  *See also*, 6 Charles Alan Wright, et. al., Federal Practice & Procedure § 1442 (2d ed. 1994 & sup 2009). Impleader of a third party must fit these requirements of Rule 14. It is not enough that the suit between the parties is somehow related or even arises out of the same general set of facts as the main claim. "Impleader [under Rule 14] is available only against persons who are or may be liable to defendant for part or all of the plaintiff's claim; it cannot be used as a way of combining all controversies having a common relationship into one action" *Catskill Mts. Chptr. Of Trout Unlimited, Inc. v. City of New York*, 207 F. Supp 2d 3.

As a threshold matter, Fulop is not liable to ACP for part or all of Narrative's infringement claims in the main action.  Quite simply, impleader is not proper under these circumstances and the third party complaint should be stricken or dismissed.

### B.  **Motion To Dismiss**

To survive a motion to dismiss, "…a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is labile for the misconduct alleged." *Shannon*, 2016 WL 6768497 at *1, quoting *Ashcroft*, 556 U.S. at 678.  No such reasonable inference is possible here because the so called "facts" as alleged are directly contradictory to black letter law and is clear that no relief could be granted under any set of facts consistent with the allegations.

As a threshold matter, Fulop is not liable to defendant ACP for part or all of Narrative's infringement claims in the main action.  Quite simply, impleader is not proper under these circumstances and the third party complaint should be stricken or dismissed with prejudice. Moreover, ACP's slander of title claim is fatally defective and should be dismissed because, among other reasons, it never owned the property in question.

## II.      ACP CONTINUES TO BE IN DEFAULT

### A.  The Amended Third Party Complaint Was Not Timely Filed

"A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff *must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer*."  Fed. R. Civ. P. 14 (a) (1) [emphasis added].

ACP failed to comply with the express requirements of Rule 14.  It did not file the third party complaint within 14 days after serving its original answer, nor did ACP by motion file for leave of this Court. ACP further failed to seek leave of court by motion before filing the Amended Third Party Complaint.

The requirements of Rule 14 are clear and unambiguous. Leave of court must be obtained if the defendant files the third party complaint more than 14 after serving its original answer. No exceptions are permitted. The Rule is not circumvented, as ACP would have the Court believe, by the filing of an amended third party complaint. ACP argues that notwithstanding Rule 14, it did not need to seek leave to file the Amended Third Party Complaint because "…the Court had already granted ACP leave to file the Amended Third Party Complaint *sua sponte.*"  *(Dkt. No.

83, Footnote 4).  However, leave to file an Amended Third Party Complaint does not *sua sponte* cure jurisdictional defects in the pleadings.

The only case that counsel for ACP could locate which even remotely supports its tenuous position is *Catskill Mountains Chapter of Trout Unlimited Inc. v. City of New York,* 207 F.Supp. 2d 3, 4-5 (N.D.N.Y.2002), 2002 U.S. Dist. LEXIS 11480. The facts, however, are very different in that case.  In *Catskill,* unlike here, the defendant had obtained prior verbal assurances from the Court that leave by motion was not required before filing the third party complaint. It should also be noted that the Court subsequently dismissed the third party complaint upon plaintiff's motion holding that fairness to Plaintiff's dictated that the standard that would have applied if the defendant had sought leave by motion to file the third party complaint be utilized.

In deciding whether to grant leave to implead a third party, the court in *Catskill* noted the following factors need to be considered: (i) whether such leave would prejudice the plaintiff (and the third party defendant), (ii) unduly complicate the trial and  (iii) foster an obviously unmeritorious claim. *Id* at   . Finally, Courts should consider "whether the movant deliberately delayed or was derelict in filing the motion…"  *Fashion-in-Prints, Inc. v. Salon, Marrow & Dyckman,* L.L.P., 199 U.S. Dist. LEXIS 106177, 97 CIV 340, 199 WL 5000149.

 All of these factors weigh heavily against ACP.  Here, Fulop has been prejudiced by the long delay and has been forced to incur the substantial cost and expense of preparing two sets of motion papers and a reply brief.  Adding the third party defendant would also unduly complicate an already complicated copyright infringement case, would be prejudicial to plaintiff in the main action, and would add additional layers of discovery and motion practice.  Further, ACP's claim of slander of title is not a meritorious claim as will be evidenced below.  Moreover, allowing the

impleader would reward ACP's conduct in deliberately causing the delay and being derelick in

failing to seek the required leave of this Court.

### B.  The Amended Third Party Complaint Fails to Satisfy The Requirements Necessary To Implead A Party Required Under Rule 14

Third-party practice is governed by Rule 14 of the Federal Rules of Civil Procedure. Rule

14 (a) (1) states that " a defending party may, as a third party plaintiff, serve a summons and

complaint on a nonparty *who is or may be liable to it for or part of the claim against it*."

[emphasis added]. Impleader of a third party must fit these requirements of Rule 14. It is not

enough that the suit between the parties is somehow related or even arises out of the same

general set of facts as the main claim. *S. E. Mortgage Co. v. Mullins*, 514 F. 2d 747 (5th Cir.

1975), see also *Catskill Mountains Chapter of Trout Unlimited Inc. v. City of New York,* 207

F.Supp. 2d 3, 4-5 (N.D.N.Y.2002),  Here, Fulop is not liable to ACP for any part of the claims

commenced by Narrative against ACP in the main action. Therefore, he is not a proper party

under Rule 14.  The third party claim being asserted by ACP is for slander of title, a completely

different and unrelated tort. The asserted connection between impleader and the main action is

simply too attenuated and speculative to allow impleader here.

ACP maintains that the claims in the main action are related because if "… Narrative's

copyright infringement claims against ACP will be defeated for lack of copyright ownership and

the falsity of Fulop's communications to Narrative regarding the copyright-ownership of those

works will be established".  This "but for" logic has been soundly rejected by the U.S. Court of

Appeals for the 2nd Circuit.  *Kenneth Leventhal & Co. v. Joyner Wholesale Co*., 736 F. 2d 29.

Slander of title is not even remotely at issue in the main action and such claims are way too

speculative to justify impleader.  *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F. 2d

29  (1984 U.S. App. LEX22024)  dismissing with prejudice a third-party complaint for failure to

state a claim pursuant to Rule 12(b)(6) finding that there was no identifiable claim by the original plaintiff against the defendant which involved the third-party defendants, and so held that impleader was inappropriate. *Id*. *Joyner Wholesale Co*., 736 F. 2d 29.

ACP further contends that the fact that the third-party complaint does not seek to hold Fulop secondary liable for Narrative's claims against ACP is not a bar to ACP's third-party slander of title claim against Fulop citing *Cf. Old Republic Ins. Co. v. Concast*, Inc., 99 F.R.D. 566, 568-69 (S.D.N.Y. 1983) to support the argument that that Rule 14 (a) does not limit permissible third party complaints to the "classic indemnity model" passing original defendant's liability to original plaintiff on to third-party defendant. ACP, however, fails to note that this case was a very limited exception to the general rule.  Significantly, it was expressly noted in Concast that the "classic indemnity model" is indeed the correct standard for most cases.  "For most cases, James correctly interprets the requirements of Rule 14 (a); impleader may properly occur only in cases where a third-party defendant's liability derives from or is secondary to that of defendants. *Cf. Old Republic Ins. Co. v. Concast*, Inc., 99 F.R.D. 566, 568-69 (S.D.N.Y. 1983).

"An entirely separate and independent claim cannot be maintained against a third party under Fed. R. Civ. P. 14, even though it does rise out of the same general set of facts as the main claim. The question whether a defendant's demand presents an appropriate occasion for the use of impleader or else constitutes a separate claim has been resolved consistently by permitting impleader only in cases where the third party's liability was in some way derivative of the outcome of the main claim. In most such cases it has been held that for impleader to be available the third party defendant must be liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff. Stating the same principle in different words, other authorities

declare that the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery, or that the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant." *Index Fund, Inc. v. Hagopian,* 417 F. Supp 738 (S.D.N.Y. 1976) (Tenney, J.)

### III.     ACP HAS NOT STANDING TO ASSERT SLANDER OF TITLE

### A.     ACP Never Owned the Copyright Registrations

### (i)     Fulop Has Legal Title

As a threshold matter, there can be no slander of title where the property is not owned by the party asserting the claim. Here, ACP never had legal title and has no standing to commence this third party action. The copyright registrations were issued to Fulop after due examination and review by the U.S. Copyright Office. These registrations show title in the name of Fulop who subsequently assigned the registrations to plaintiff in the main action Narrative Ark Entertainment. A copy of said assignment is attached as Exhibit B to plaintiff Narrative Ark's Amended Complaint, Dkt. No. 36.  The certificates of registration are prima facie evidence of the validity of the copyright and the facts stated therein. 17 USC § 410 (c). Accordingly, as a matter of record and law, ACP does not own the copyrights and therefore has no standing to assert the slander of title claim.  Saying you own the "Brooklyn Bridge" does not give you the right to sell it or file suit for slander of title against the rightful owner.

### (ii)     ACP Has No Colorable Claim

The basis for ACP claims of ownership is that "it was the expectation at all relevant times that ACP and/or Sega would own all of the copyrights in and to Fulop's work, not Fulop himself. Dck # 74 at ¶ 6.  ACP further asserts that it is the owner of the works claimed in the copyright

registrations because such works were created for ACP on a "work for hire" basis.  Dck 74 at ¶

11 (notwithstanding ACP's contradictory claim that Sega may own the work, see Dkt. No. 74 at

¶ 5).  Contrary to ACP's assertions, the provisions of the U.S. Copyright Act provides that Fulop

is the owner. The Copyright Act has specific statutory requirements regarding when a work is

created as a "work for hire."  In order to qualify as a work for hire a work must either (i) be

created by an employee within the scope of employment or (ii) pursuant to a signed instrument in

writing.  17 USC §§ 101, 204 (a).

Fulop was not an employee of ACP or Sega at the time the works were created and his

employment status is not in dispute.  Significantly, he was a freelance worker when he created

the works and thus owns the works he created unless there was a contract or other writing.  17

USC §§ 101, 204 (c)    Transfers of copyright are not valid unless in a writing signed by the

owner of such the rights conveyed or such duly authorized agent.  17 USC § 204 (a). A transfer

of copyright is simply "not valid" without the required written instrument. *Konisberg Int'l, Inc v.

Rice*. 16 F.3d 355, 357 (9th Cir. 1994).  Tellingly, no such signed writing has ever been produced

by ACP. Nor has ACP or Sega ever alleged the date of said purported agreement, the alleged

parties signing or even quoted in pleadings the language of the purported work for hire

agreement transferring copyright ownership to ACP or Sega.

Moreover, Fulop denies ever being asked to sign or signing any such contract or other

writing transferring his ownership rights to ACP or Sega. *See*, Declaration of Scott D. Fulop in

support of Fulop's Motion to Dismiss ("Fulop Decl.") at ¶ 6.    Additionally, Fulop was not an

employee of ACP at the time the works were created. *See*, Fulop Decl.¶ ¶ 4,5. Therefore, there is

no legal basis whatsoever for a claim of slander of title because ACP never owned the property

in dispute either by operation of law (as employer) or by a work for hire agreement which has

never been produced in the pleadings. Not a single relevant fact has been asserted by ACP which

supports its spurious conclusion that it somehow owns the copyrights.

### B.  SLANDER CLAIM FACIALLY DEFECTIVE FOR FAILING TO ALLEGE MALICE

Interesting that the very case cited by ACP alleging supporting its contention that the

Third Party Complaint adequately pleads a cause of action for slander of title holds directly

otherwise.  In *Chamilia, LLC v. Pandora Jewelry*, it was held that one of the required elements

of a slander of title claim is that the statements made "*must* have been calculated to cause harm.

In other words, Plaintiff *must* demonstrate that Defendant acted *with malice. Chamilia, LLC v.*

*Pandora Jewelry, LLC*, No. 04 Civ. 6017, 2007 WL 2781246, *11 (S.D.N.Y. Sept 24, 2007)

[emphasis added] . Here, ACP has merely alleged that the statements were false.

 An action for slander of title is maintainable only on a showing of malice.  Robert D.

Sack, 13 Sack on Defamation §§ 13.1.4.1, 13.1.4.5 (2006). A plaintiff must demonstrate that a

defendant acted with malice. See, *Modulars by Design, Inc. v. DBJ Devel. Corp.*, 174 A.D. 2d

885, 571 N.Y. S. 2d 168, 170 (App. Div. 1991).  "Where malice is an element of a claim some

facts must be asserted to support the claim that the state of mind existed…" *Republic Nat'l Bank,*

651 F.2d 825, 828 (2d Cir. 1981). See also*, Fink v. Shawangunk Conservatory Inc.*, 15 A.D. 3d

754, 790 N.Y.S. 2d 249, 251 (App Div 2005) (upholding summary judgment in favor of

defendant on slander of title claim for failure to produce evidence of "malicious intent")*.*

In New York, "courts have applied the "actual malice standard, and have regularly

dismissed claims where the plaintiff has failed to show that the defendant acted with knowledge

that the statements were false or with a "reckless disregard for their truth or falsity."   2007 U.S.

Dist. Lexis    Here, Fulop acted reasonably in relying on the confirmation from the U.S.

Copyright, as evidenced by the issuance of the certificates of registration to Fulop, that he owned the copyright registrations. A good faith belief that a statement is true rebuts any inference of malice. "We find no evidence of malicious intent necessary to support a cause of action for slander of title and, given our conclusion that defendant had probable cause to claim title to the disputed property, these public assertions cannot be said to have been made with reckless disregard for their truth or falsity. See, *Terrace Hotel Co. v. State*, 19 N.Y. 2d 526, 227 N.E. 2d 846, 849-50, 281 N.Y.S. 2d 34 (N.Y.1967) (holding slander of title to require proof of "malice or spite" and dismissing claim where defendant had good faith belief that statement were true). See also, *John W. Lovell Co v. Houghton*, 116 N.Y. 520, 22 N.E. 1066.

Here, Fulop not only had probable cause to believe the statement were true, but had every legal right and authority to rely on the title issued to him by the U.S. Copyright Office. Therefore, as a matter of law, no inference of malice can be made or implied.

Even assuming *arguenda* that Fulop was incorrect in his belief, mere falsity or prior disputes between the parties, and "[s]uspicion, surmise and accusation" are insufficient to raise an inference of malice. *Donofrio-Ferrezza v. Nier*, No. 04-CV-1162, 2005 U.S. Dist. LEXIS 21103, 2005 WL 2312477, at *7 (S.D.N.Y. Sept. 21, 2005) (quoting *Shapiro v. Health Ins. Plan of Greater* N.Y., 7 N.Y.2d 56, 163 N.E.2d 333, 338, 194 N.Y.S.2d 509 (N.Y. 1959)). In this case, there is no evidence that any of Defendant's representatives' statements were knowingly false. Putting aside the question of actual falsity, Plaintiff has failed to raise a material issue of fact that Defendant's representatives knew their statements were false or harbored any doubts about their falsity. Although there are disputes over what was said, none of the depositions even suggest that Defendant's representatives knew that Plaintiff's products did not infringe on Defendant's rights. Nor is there evidence that the employees making the relevant statements,

mostly salespersons, harbored any personal doubts about the veracity of their statements. The conversations at issue were primarily among sales representatives of companies that had

C.      **THE COMMUNICATIONS WERE PRIVILEGED**

There is also no basis for liability because Fulop's communications were clearly privileged under the "common interests" privilege. The 'common interests' privilege is a qualified privilege, and it generally protects statements that are 'communication(s)' made by one person to another person upon a subject which both have an interest. *Liberman v. Gelstein,* 80 N.Y. 2d 429, 605 N.E. 2d 344, 349.  New York courts have extended the common interest privilege to otherwise-defamatory communications between partners, officers of a corporation, and employers and their employees. *Liberman*, 605 N.E. 2d at 349 ("This "common interest" privilege has been applied, for example, to employees of an organization, members of a faculty tenure committee and constituent physicians of a health insurance plan." (internal citations omitted)). It has also been held to encompass a conversation between two businesspersons, meeting to discuss the relationship between their two companies, when the statements were intended to protect one businessperson's business from unethical competition.  See *McSherry v. Nat'l Blue Print Div. of Nat'l Reprographics, Inc*., No. 81-CV-5182, 1982 U.S. Dist. LEXIS 17044 at *1-2 (S.D.N.Y. Dec 27, 1982).

ACP, of course, has no idea beyond wild speculation what statements (if any) were ever made between Fulop and Narrative Ark Entertainment. Moreover, the fact that a litigation was filed and reported is privileged.  "A civil action cannot be maintained against any person, firm or corporation for the publication of a fair and true report of any judicial proceeding…". See, New York Civil Rights Law §74.

To the extent any communications were ever made between Fulop and Narrative, such communications were clearly privileged under the "common interest priviledge".

## <u>CONCLUSION</u>

For all of the foregoing reasons, it is readily apparent that ACP has not complied with the jurisdiction rules and mandates of Rule 14.  Further, the Third Party Complaint is meritless and has been asserted in bad faith for purposes of delay and harassment.

Given the glaring legal deficiencies in the filing of the Amended Third Party Complaint, and the meritless allegations contained therein, Fulop respectfully requests this Court to strike or dismiss he Amended Third Party Complaint in its entirety with prejudice.

ACP knew or should reasonable have known that there is no basis for the filing of the Amended Third Party Complaint and that such filing was not in compliance with Rule 14. Further the Amended Third Party Complaint was filed with malicious intent seeking to punish Fulop personally by seeking to embroil him in an expensive and burdensome litigation which has no nexus to the main controversy. It is therefore requested that Fulop be awarded the costs and fees, including attorney fees, incurred in connection with this motion, together with such other, further and different relief as this Court deems just and proper.

Dated:  New York, NY
        April 3, 2017

                              Respectfully submitted,



                              Law Offices of Neil Burstein

By:   /nab/_____

Neil Burstein

Neil A. Burstein
63 Winterberry Circle
Cross River, NY 10518
Phone: 914 977 3467
Email: nabesq1@gmail.com

Attorney for Third Party Defendant Scott Fulop

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on April  3, 2017, the foregoing Reply Brief in support of Third Party Defendant Scott D. Fulop's Motion to Strike and Dismss the Amended Third Party Complaint was filed electronically. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing via the Court's system.

_____s/Neil Burstein_____

Neil Burstein

\ACP_Litiation_Reply_Brief_Support_fulop_dismiss_final_4-3-17