UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NARRATIVE ARK ENTERTAINMNET LLC,          :
              Plaintiff,          :
                        :          **OPINION AND ORDER**
v.          :
                        :          16 CV 6109 (VB)
ARCHIE COMIC PUBLICATIONS, INC. and          :
SEGA OF AMERICA, INC.,          :
              Defendants.          :
------------------------------------------------------------x
ARCHIE COMIC PUBLICATIONS, INC.,          :
              Counterclaim Plaintiff and          :
              Third-Party Plaintiff,          :
                        :
v.          :
                        :
NARRATIVE ARK ENTERTAINMNET LLC,          :
              Counterclaim Defendant,          :
                        :
SCOTT D. FULOP,          :
              Third-Party Defendant.          :
------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Narrative Ark Entertainment, LLC ("Narrative Ark") brings this action against

Archie Comic Publications, Inc. ("Archie") and Sega of America, Inc. ("Sega"), alleging claims

of copyright infringement, violations of the Lanham Act, 15 U.S.C. § 1125(a), deceptive

business practices under the New York General Business Law, and common law claims of unfair

competition and unjust enrichment. Narrative Ark also seeks a declaratory judgment that certain

of Archie's copyright registrations are invalid.

      Archie brings a counterclaim against Narrative Ark and a third-party complaint against

third-party defendant Scott D. Fulop, seeking a declaratory judgment that certain of Narrative

Ark's copyright registrations are invalid. Archie also brings a third-party claim for slander of

title against Fulop.

Before the Court are (i) Archie's partial motion to dismiss Narrative Ark's Lanham Act, unfair competition, and unjust enrichment claims pursuant to Rule 12(b)(6) (Doc. #41); (ii) Sega's motion to dismiss the amended complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, in the alternative, for a more definitive statement pursuant to Rule 12(e) (Doc. #47); and (iii) Fulop's motion to strike or dismiss the amended third-party complaint pursuant to Rule 12(b)(6) and other grounds (Doc. #78).

For the reasons set forth below, Archie's motion is GRANTED; Sega's motion to dismiss is GRANTED and its motion for a more definitive statement is DENIED as moot; and Fulop's motion is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367.

## BACKGROUND

The following factual background is drawn from the amended complaint, amended third-party complaint, and the parties' submissions in support of and in opposition to the pending motions. In deciding the pending motions, the Court accepts as true all well-pleaded factual allegations in the amended complaint and amended third-party complaint, and draws all reasonable inferences in plaintiff's and third-party plaintiff's favor.

Archie is based in New York and is a publisher of comic books. Sega is located in California and is primarily a video game publisher. In 1992, Archie entered into a license with Sega to create and sell comic books based on some of Sega's characters, including "Sonic the Hedgehog." In exchange for the right to develop and market comic books based on "Sonic the Hedgehog," Archie agreed to pay Sega royalties based on the works Archie developed.

Narrative Ark is a New York limited liability company, and Scott D. Fulop is Narrative Ark's principal.

Archie employed Fulop as a staff editor from around August 1988 to May 1991, and again from around February 1994 to January 1996. After his employment with Archie ended in 1996, Fulop claims to have created and developed, either individually or in collaboration with other freelance writers and artists, various comic book stories, characters, and artwork, including new and original characters, for the "Sonic the Hedgehog" comic book series. Fulop claims he was paid a fixed sum as a freelancer for first publication rights in North America for each story or artwork Archie accepted. Fulop also claims he never entered into a work-for-hire agreement with Archie.

In addition to solo assignments, Fulop collaborated as a co-author with Kenneth Penders, who also worked as a freelance writer and artist for Archie, on several projects for the "Sonic the Hedgehog" comic book series. Sometime after 1998, Fulop ceased freelance writing for Archie.

In 2009, Penders informed Fulop that Archie was beginning to reprint certain stories written by Fulop and Penders, as well as continuing to use some characters created by Fulop and Penders in other media.

Penders filed and obtained copyright registrations in 2009 and 2010 for a number of stories written or illustrated by Penders, and in some instances co-written by Fulop or co-written by Fulop and other writers during their tenures as freelance writers and artists for Archie. Four of Penders's copyright registrations list Fulop as one of the copyright claimants. In addition, Fulop filed and obtained copyright registrations in 2010 for other works he created for Archie.

Fulop organized Narrative Ark in October 2014. On October 5, 2015, Fulop transferred and assigned all of his copyrighted works and other intellectual property rights to Narrative Ark.

Narrative Ark alleges (i) Archie and Sega have produced and distributed publications, books, and advertisements in which the stories, characters, and artwork Narrative Ark claims to

own have been used beyond the scope of the rights Fulop granted to Archie and without further compensation to Fulop or Narrative Ark; (ii) Archie and Sega have claimed false authorship and ownership of these works; and (iii) Archie has asserted false claims of authorship and ownership of the works in certain applications for copyright registration filed with the United States Copyright Office.

Based on these allegations, Narrative Ark asserts causes of action against Archie and Sega for direct and contributory copyright infringement, and seeks a declaratory judgment that Archie's above-mentioned copyright registrations are invalid.

Narrative Ark also asserts causes of action against Archie for violations of the Lanham Act, deceptive practices under New York General Business Law Section 349, unfair competition, and unjust enrichment.

Archie moved to dismiss the amended complaint as to Narrative Ark's claims for violations of the Lanham Act, deceptive practices under General Business Law Section 349, unfair competition, and unjust enrichment. Archie answered Narrative Ark's other claims, and brought an amended counterclaim against Narrative Ark and an amended third-party complaint against Fulop seeking a declaratory judgment of invalidity of Narrative Ark's copyright registrations. Archie also brings an amended third-party claim for slander of title against Fulop. Thereafter, Fulop moved to dismiss the amended third-party complaint arguing, among other things, (i) Archie failed to timely file its third-party complaint under Rule 14, (ii) Archie is not the owner of the property at issue in this case, (iii) Archie failed to state a claim upon which relief can be granted, and (iv) the claims against Fulop do not arise out of the subject matter of Narrative Ark's claims against Archie.

Sega also moved to dismiss the amended complaint, arguing Narrative Ark cannot

establish any basis for this Court to exercise personal jurisdiction over Sega.  In the alternative, if

Sega's motion to dismiss is denied, Sega seeks a more definitive statement from Narrative Ark

that clarifies Narrative Ark's factual and legal claims asserted against Sega.

## DISCUSSION

I.    Legal Standards

A.    Rule 12(b)(2)

On a motion to dismiss under Rule 12(b)(2), the "plaintiff bears the burden of showing

that the court has jurisdiction over the defendant."  In re Magnetic Audiotape Antitrust Litig.,

334 F.3d 204, 206 (2d Cir. 2003).  Prior to discovery, a plaintiff may defeat a motion to dismiss

"by pleading in good faith legally sufficient allegations of jurisdiction."  Ball v. Metallurgie

Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (internal citation omitted).  A plaintiff

can make this showing through "affidavits and supporting materials containing an averment of

facts that, if credited . . . would suffice to establish jurisdiction over the defendant."  Whitaker v.

Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).  When there has been no hearing on the

merits, "all pleadings and affidavits must be construed in the light most favorable to [plaintiff]

and all doubts must be resolved in . . . plaintiff's favor."  Landoil Res. Corp. v. Alexander &

Alexander Servs. Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).

B.    Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft

v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

C.    Rule 12(f)

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are generally looked upon with disfavor."  Chenensky v. N.Y. Life Ins. Co., 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (internal quotation marks omitted).  A motion to strike "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible."  Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

District courts have discretion in resolving Rule 12(f) motions.  See, e.g., In re Platinum & Palladium Commodities Litig., 828 F. Supp. 2d 588, 593 (S.D.N.Y. 2011).

II.     Analysis

     A.     Archie's Partial Motion to Dismiss the Amended Complaint

          1.     Lanham Act Claim

Narrative Ark alleges Archie and Sega violated the Lanham Act by engaging in false designation of origin and false and misleading description of fact regarding the creation, origin, and ownership of Narrative Ark's copyrighted works.  Narrative Ark's claim is based on the allegation that defendants have published and sold or otherwise used Narrative Ark's copyrighted works in Archie's publications and advertisements in which false credit as to the source of the authorship is given to Archie and Sega, thereby passing off Narrative Ark's copyrighted works as those of Archie and Sega.  Narrative Ark also claims Archie and Sega have engaged in false designation of origin and false and misleading description of fact regarding the creation, origin, and ownership of Narrative Ark's copyrighted works by registering copyrights with the U.S. Copyright Office claiming ownership and authorship credit for works created, authored, and owned by Narrative Ark.  Narrative Ark claims consumers viewing defendants' group registrations are likely to be misled to believe the works belong in whole to defendants when in fact they belong in whole or in part to Narrative Ark.

Archie argues Narrative Ark's claim for false designation of origin of goods under the Lanham Act is foreclosed by the U.S. Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 31–38 (2003).

The Court agrees with Archie.

Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), creates a cause of action against one who makes a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to

the origin . . . of his or her goods." The term "origin" refers to both geographical origin as well

as the origin of manufacture.  <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. at

30–31.  Thus, a claim of "reverse passing off"—that defendant has misrepresented someone

else's goods or services as his own—is actionable under Section 1125(a)(1)(A).[1]  <u>Id</u>. at 28 n.1,

31.

      In <u>Dastar</u>, the plaintiff brought a reverse passing off claim against Dastar Corp.,

distributor of the "Campaign" videos.  <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539

U.S. at 26–28.  The Campaign videos were about the Allied campaign in Europe during World

War II, and included footage from the "Crusade" television series, which had been produced by

Time, Inc., decades earlier.  <u>Id</u>.  However, Dastar Corp. neglected to attribute the "Crusade"

television series as the origin of this footage.  <u>Id</u>.

      In considering the plaintiff's claims under the Lanham Act, the Supreme Court held:

> reading the phrase "origin of goods" in the Lanham Act in accordance with the
> Act's common-law foundations (which were <u>not</u> designed to protect originality or
> creativity), and in light of the copyright and patent laws (which <u>were</u>), we conclude
> that the phrase refers to the producer of the tangible goods that are offered for sale,
> and not to the author of any idea, concept, or communication embodied in those
> goods.

<u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. at 37.  In other words, the author or

creator of ideas that are reproduced in tangible products—such as comic books—is not the

"origin of goods" within the meaning of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

Accordingly, such an author may not claim that the producer of the tangible product—such as a

publisher—has committed an actionable "false designation of origin" by reproducing the

---

[1]    "Passing off" occurs when a producer falsely claims as its own goods that were produced
by someone else, and is also actionable under Section 1125(a)(1)(A).  <u>Dastar Corp. v. Twentieth
Century Fox Film Corp.</u>, 539 U.S. at 27 n.1.

author's ideas without proper attribution.  Id.; see also Silverstein v. Penguin Putnam, Inc., 522

F. Supp. 2d 579, 601 (S.D.N.Y. 2007) (same).

Narrative Ark argues Dastar held that the unaccredited copying of a work in the public

domain is not actionable under Section 43(a) of the Lanham Act, which is distinguishable from

this case because the copyrighted works at issue here are not in the public domain.  Plaintiff also

relies on Levine v. Landy, 832 F. Supp. 2d 176, 188–91 (N.D.N.Y. 2011), a case in which the

court allowed a reverse passing off claim under the Lanham Act to go forward based on the

plaintiff's allegation that the defendant had reproduced and published plaintiff's photographs

without attribution.

The Court rejects plaintiff's suggestion that the holding of Dastar is limited to works in

the public domain.  As other courts in this District considering this question have concluded,

Dastar's holding barring Lanham Act claims premised on the false designation of the origin of

ideas, concepts, or communications embodied in tangible goods, does not turn on whether the

work is still under copyright protection or in the public domain.  See, e.g., Contractual

Obligation Prods., LLC v. AMC Networks, Inc., 546 F. Supp. 2d 120, 130 (S.D.N.Y. 2008)

(noting "district court cases following Dastar have expressly rejected the argument that Dastar

does not apply where, as here, the work in issue is copyrighted" and collecting cases).

Moreover, Narrative Ark's reliance on Levine v. Landy is misguided.  In that case, the

court distinguished its facts from Dastar and its progeny, concluding the plaintiff alleged the

defendants had misrepresented the origin of the photographs themselves, rather than the ideas,

concepts, or communications embodied in the photographs.  Levine v. Landy, 832 F. Supp. 2d at 190.[2]  Such an argument is inapplicable here.

Accordingly, Narrative Ark's Lanham Act claim is dismissed.

### 2.  Unfair Competition Claim

Narrative Ark also brings an unfair competition claim under New York law based on the same conduct giving rise to its Lanham Act claim—namely, Archie's alleged false designations of origin of stories, characters, and artwork owned by Narrative Ark in Archie's publications and advertisements and in copyright applications.

Narrative Ark's state law unfair competition claim is likewise foreclosed by Dastar. "Although Dastar construed the Lanham Act, 'it is well recognized that the standards for Section 43(a) claims of the Lanham Act and unfair competition claims under New York Law are almost indistinguishable.'"  Vaad L'Hafotzas Sichos, Inc. v. Krinsky, 133 F. Supp. 3d 527, 538 n.4 (E.D.N.Y. 2015), appeal withdrawn (Feb. 19, 2016) (quoting Tri–Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 363 (S.D.N.Y. 1998)).  And "[u]nder Dastar, . . . the law of unfair competition does not allow a claim for false or misleading representations as to the origin of the content of a 'communicative product.'"  Id. at 538.

Thus, Narrative Ark's common law unfair competition claim is dismissed for the same reasons as its Lanham Act claim.

---

[2]    In so holding, Levin v. Landy relied on Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775 (2d Cir. 1994), which pre-dates Dastar and is no longer good law.  See, e.g., Atrium Grp. De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc., 565 F. Supp. 2d 505, 513 (S.D.N.Y. 2008).  Accordingly, it is not even clear Levin v. Landy is correctly decided.

### 3. Deceptive Business Practices Claim

Narrative Ark claims Archie's alleged false designations of origin of certain stories, characters, and artwork "caused harm to the public" by "deceiv[ing] or mislead[ing]" the public and "influenc[ing] the purchasing decisions of the public." (Am. Compl. ¶¶ 106, 109).

Archie contends Narrative Ark has failed to allege sufficient harm to the public under Section 349 of the New York General Business Law.

The Court agrees with Archie.

Section 349 of the New York General Business Law is a consumer protection statute providing that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." N.Y. Gen. Bus. L. § 349(a). It creates a private right of action for consumers harmed by violation of the statute. Id. § 349(h). To state a claim, a plaintiff must allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 324 (S.D.N.Y. 2010) (quoting Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)). "[T]he gravamen of the complaint must be consumer injury or harm to the public interest." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).

Here, Narrative Ark alleges the public was harmed because Archie's conduct caused confusion. In particular, Narrative Ark alleges Archie fraudulently concealed the "extent and use of properties belonging" to Narrative Ark (Am. Compl. ¶ 108), and that Archie's "false and misleading representations of fact and conduct have influenced the purchasing decisions of the public." (Id. ¶ 109). Narrative Ark asserts no further allegations as to how consumers were harmed by Archie's alleged conduct.

However, "allegations of consumer confusion are generally not sufficient consumer harm to state a section 349 claim." Levine v. Landy, 832 F. Supp. 2d at 188–91 (quoting Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 324 (S.D.N.Y. 2010)); see also Gross v. Bare Escentuals Beauty, Inc., 632 F. Supp. 2d 293, 299 (S.D.N.Y. 2008) ("Consumer confusion as to the source of the product does not create a cause of action under this statute. Danger to the public safety and health does.").

Accordingly, Narrative Ark's deceptive business practices claim under General Business Law Section 349 is dismissed.

4.    Unjust Enrichment Claim

Narrative Ark claims it has been "denied any financial compensation and credit in connection with the publication and sale of" its copyrighted works, and "has lost business opportunities caused by . . . diversion of trade and been diminished in good will and reputation, and dilution of its rights." (Am. Compl. ¶¶ 123, 124). Narrative Ark further claims Archie and Sega have "been enriched by the use and sale of [Narrative Ark's copyrighted works] in advertising, merchandising and the sale of comic books and other merchandise at [Narrative Ark's] expense." (Id. ¶ 125).

Archie argues Narrative Ark's unjust enrichment claim is preempted by federal copyright law.

The Court agrees.

To state a claim for unjust enrichment under New York law, a plaintiff must allege (i) the defendant was enriched, (ii) at the plaintiff's expense, and (3) that it would be "against equity and good conscience to permit the defendant to retain what is sought to be recovered." Cruz v.

McAneney, 31 A.D.3d 54; 59 (2d Dep't 2006); see also Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).

"However, the Copyright Act preempts a state cause of action if the subject matter of the state law right falls within the subject matter of federal copyright law and the state law rights are equivalent to the rights federal copyright law protects."  Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1321 (S.D.N.Y. 1997) (citing Computer Associates Int'l, Inc. v. Altai, 982 F.2d 693, 716 (2d Cir. 1992)).

"A state law claim whose gravamen is unauthorized publication is preempted by federal Copyright law unless it involves rights that are 'different in kind' from those protected by the Copyright statute."  Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. at 1322 (quoting Strauss v. The Hearst Corp., 8 U.S.P.Q.2d 1832, 1838–39 (S.D.N.Y. 1988)).

Narrative Ark's unjust enrichment claim is based on Archie's allegedly illicit use of Narrative Ark's stories, characters, and artwork in its publications and advertisements—conduct that constitutes infringement of a copyright owner's exclusive rights under 17 U.S.C. § 106 and the same conduct on which Narrative Ark's direct and contributory copyright infringement claims are premised.  This theory of unjust enrichment is "essentially equivalent to rights protected by the Copyright Act" and thus Narrative Ark's unjust enrichment claim relating to the use of copyrighted material is preempted.  See Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. at 1322.

Accordingly, Narrative Ark's unjust enrichment claim is dismissed.

B.    Sega's Motion to Dismiss the Amended Complaint for
       Lack of Personal Jurisdiction

Sega, a California corporation, argues the allegations in the amended complaint fail to establish that the exercise of personal jurisdiction over Sega in New York would be proper here.

To determine whether specific personal jurisdiction exists over a non-domiciliary in a case involving a federal question, the Court engages in a two-step inquiry. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010). First, the Court determines whether the forum state's law permits the exercise of jurisdiction over the defendant. Id. If such a basis for jurisdiction exists, the Court then must determine "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Id. at 164.

### 1. New York's Long-Arm Statute

Narrative Ark asserts personal jurisdiction over Sega under New York Civil Practice Law and Rules Sections 302(a)(1) and (3).

Section 302(a)(1) provides, "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, . . . who in person or through an agent[,] transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). Thus, the Court must determine whether Sega has sufficient business contacts in New York that give rise to Narrative Ark's copyright infringement claim.

The Court properly considers the following factors in deciding whether a foreign defendant transacts business in New York for purposes of Section 302(a)(1):

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22–23 (2d Cir. 2004) (internal quotation marks omitted). "[N]o one factor is dispositive and other factors may be considered. The ultimate

determination is based on the totality of the circumstances." Id. at 23 (citations and internal quotation marks omitted).

The only link Narrative Ark alleges Sega has with New York arises out of its contractual relationship with Archie, a New York company, pursuant to which Archie developed, marketed, and sold works that Narrative Ark claims to own. Narrative Ark does not allege the agreement between Archie and Sega was negotiated or signed in New York, nor does Narrative Ark make any allegations regarding the terms of the contract or Sega's conduct thereunder. The licensing agreement between Sega and Archie contains California choice-of-law and venue clauses, and it requires Archie to make royalty payments to Sega in California. Narrative Ark does not allege Archie acts as Sega's agent,[3] nor does it allege Sega makes or distributes any of the products Archie produces and sells in New York.

It is well established "[t]he mere fact that a non-domiciliary enters into a contract with a company headquartered in New York does not establish the requisite minimum contacts, unless the purpose of the contract is to project the non-domiciliary into the New York market." Spencer Trask Ventures, Inc. v. Archos S.A., 2002 WL 417192, at *4 (S.D.N.Y. Mar. 18, 2002) (internal quotation marks omitted); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can

---

[3]     In its brief in opposition to Sega's motion to dismiss, Narrative Ark contends "Archie also acted as Sega's agent in New York for various joint business purposes." (Pl.'s Opp'n at 21). However, Narrative Ark does not allege any facts in the amended complaint supporting such a contention, and Section 19 of the licensing agreement between Archie and Sega expressly provides, "Nothing contained herein shall be construed as a joint venture or shall make one party the agent of the other party." (Suai Decl. Ex. A § 19). Narrative Ark merely asserts the "Sonic the Hedgehog" comic books contain an indicia stating the "Postmaster should send any address changes for [sic] SONIC THE HEDGEHOG c/o Archie Comic Publications." (Pl.'s Opp'n at 21). This allegation, however, is plainly insufficient to establish that Archie acts as Sega's agent in New York.

automatically establish sufficient minimum contacts in the other party's home forum, . . . the answer clearly is that it cannot.").

The totality of the circumstances in this case—in which Sega entered into a licensing agreement with Archie that was not negotiated or executed by Sega in New York, provided for no performance by Sega in New York, contained California venue and choice-of-law clauses, and provided for payment of royalties to Sega in California—does not favor exercising personal jurisdiction over Sega.  See Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (declining to find personal jurisdiction even though defendant had an ongoing contractual relationship with a New York corporation because the contract was executed outside New York, controlling law of the contract was not New York law, there was no ongoing supervision emanating from New York, nor payment flowing into New York).

Section 302(a)(3) of New York's Long-Arm Statute provides for jurisdiction over an out-of-state defendant who "commits a tortious act without the state causing injury to person or property within the state" if the defendant (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or servicers rendered in the state" or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a)(3).

The standard under Section 302(a)(3)(i) is "'more stringent than any constitutional requirement,' and requires a showing of contacts somewhere between the large quantity required for general jurisdiction under N.Y. C.P.L.R. 301 and the 'one shot' single business transaction that can satisfy Section 302(a)(1)."  Vista Food Exch., Inc. v. Champion Foodservice, LLC, 124 F. Supp. 3d 301, 307 (S.D.N.Y. 2015), appeal dismissed sub nom. VISTA FOOD EXCHANGE

INC. v. CHAMPION FOODSERVICE LLC (Sept. 21, 2015) (quoting Ingraham v. Carroll, 90 N.Y.2d 592, 597 (1997)).  Because Narrative Ark has not alleged sufficient contacts under Section 302(a)(1), as discussed above, it cannot establish jurisdiction under Section 302(a)(3)(i) either.

With respect to Section 302(a)(3)(ii), Narrative Ark fails to allege any affirmative conduct on the part of Sega that infringed Narrative Ark's putative copyrights, or any other tortious act that Sega purportedly committed.  Additionally, Narrative Ark does not allege facts demonstrating that Sega reasonably should have expected to litigate any dispute relating to its licensing agreement with Archie in New York.  The contract contains California choice-of-law and forum selection clauses.  (Suai Decl. Ex. A §§ 15, 16).  It also contemplates that Archie would be solely responsible for the manufacture, production, sale, and distribution of products produced pursuant to the license from Sega.  (Id. § 5(e))

The amended complaint acknowledges Fulop never entered into any agreements with Sega, and that Archie, not Sega, paid Fulop for the work he performed.  (Am. Compl. ¶¶ 22, 27).  Narrative Ark's opposition to Sega's motion asserts that Sega engaged in "extensive supervision and quality control over [Archie] and the freelance workers engaged by [Archie] to create the product licensed by Sega."  (Pl.'s Opp'n at 19; Fulop Decl. ¶¶ 4, 8–15).  However, the communications Fulop alleges he had with Sega occurred from February 1994 through January 1996 while Fulop worked as a staff editor at Archie.  (See Fulop Decl. ¶¶ 3–10, 14–15).  According to the copyright registration certificates Narrative Ark submitted with its amended complaint, however, the earliest publication date of the works at issue appears to be June 4, 1996.  (See Am. Compl. Ex. A).  Narrative Ark has made no allegation that Sega supervised

freelance contributors to "Sonic the Hedgehog" comic books or the development of any of the works at issue.

Moreover, Fulop did not file his copyright registrations for the works Narrative Ark claims to own until almost one-and-a-half decades after Fulop stopped working for Archie. Narrative Ark asserts it sent Archie a demand letter regarding its claims before commencing this litigation, but did not send a similar letter to Sega. (See Am. Compl. ¶ 46, Ex. C). Narrative Ark also claims it "entered into extended settlement negotiations" with Archie before commencing this litigation, but does not assert that Sega participated in those negotiations. It is Sega's position that it had no notice of any dispute regarding work Fulop performed for Archie until Narrative Ark filed its complaint on August 1, 2016. (Suai Decl. ¶ 12; Am. Compl. ¶¶ 46, 56, Ex. C).

For the foregoing reasons, the Court concludes Sega could not reasonably have anticipated being haled into court in New York based on its license agreement with Archie. Accordingly, Narrative Ark has failed to allege a basis for this Court's exercise of personal jurisdiction over Sega.

C.      Fulop's Motion to Strike or Dismiss the Amended Third-Party Complaint

Fulop first argues the amended third-party complaint should be dismissed because it was not timely filed. This argument fails, however, because the Court expressly granted Archie leave to file an amended third-party complaint by no later than March 3, 2017, which Archie did. (See Docs. ##70, 72, 73, 74).

Next, Fulop contends Archie fails to state a claim for slander of title upon which relief may be granted.

The Court disagrees.

To state a claim for slander of title under New York law, a plaintiff must allege: "(1) a communication falsely casting doubt on the validity of [the] complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." See Chamilia, LLC v. Pandora Jewelry, LLC, 2007 WL 2781246, at *11 (S.D.N.Y. Sept. 24, 2007) (quoting 39 Coll. Point Corp. v. Transpac Capital Corp., 27 A.D.3d 454, 455 (2d Dep't 2006)).

Archie's amended third-party complaint alleges each of the elements of a slander of title claim. Archie claims it owns the works at issue and that Fulop made communications with Narrative Ark that falsely cast doubt on the validity of Archie's ownership of those works by wrongly claiming that Fulop, rather than Archie, owned those works. (See Am. Third-Party Compl. ¶¶ 6, 10–15). Archie also alleges Fulop's false communications to Narrative Ark "were calculated to cause harm to Archie by inducing Narrative Ark to pursue copyright infringement claims against Archie following Fulop's assignment of such rights to Narrative Ark." (Id. ¶ 16). Archie further claims Fulop made false communications to Narrative Ark "with actual knowledge of the falsity of such communications and with malicious intent to cause harm to Archie." (Id. ¶ 17). Finally, Archie claims it suffered special damages as a result of Fulop's slanderous communications in the form of costs and expenses of defending against Narrative Ark's infringement claims and lost licensing revenues and commercial opportunities.

Fulop next argues that Archie asserts a new cause of action against Fulop—for slander of title—that is unrelated to any of Narrative Ark's claims against Archie. This argument also fails.

Rule 14(a) of the Federal Rules of Civil Procedure provides in pertinent part: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Moreover, "[i]mpleader is appropriate when the third-party defendant's liability to the third-party plaintiff is 'dependent

upon the outcome of the main claim' or the third-party defendant is 'potentially secondarily liable as a contributor to the defendant.'" Too, Inc. v. Kohl's Dep't Stores, Inc., 213 F.R.D. 138, 140 (S.D.N.Y. 2003) (quoting Kenneth Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 31 (2d Cir. 1984)). District courts have "considerable discretion in deciding whether to permit a third-party complaint." Too, Inc. v. Kohl's Dep't Stores, Inc., 213 F.R.D. at 140 (citing Kenneth Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 30 (2d Cir. 1984)).

Here, Archie's slander of title claim against Fulop depends on the outcome of Narrative Ark's copyright claims against Archie. If Archie establishes it is the owner of the copyrights at issue in this case, which Narrative Ark claims were assigned to it by Fulop and infringed on by Archie, then Narrative Ark's copyright infringement claims against Archie will fail for lack of copyright ownership. Additionally, the falsity of Fulop's communications to Narrative Ark regarding the copyright ownership of the works at issue will be established, which is an element of Archie's slander of title claim.

The Court has considered Fulop's remaining arguments and finds them, at this stage, to be without merit.

Accordingly, Fulop's motion to strike or dismiss the amended third-party complaint is denied.

D.     Leave to Add Jonathan Goldwater and Nancy Silberkleit as Third-Party Counter Defendants

Fulop seeks leave to add Jonathan Goldwater and Nancy Silberkleit, Archie's principals and co-owners, as third-party counter defendants in the event the Court does not strike the amended third party complaint. Narrative Ark and Fulop assert no basis for this motion other than claiming "on information and belief, [Goldwater and Silberkleit] have made false communications to [Archie] and Sega which have created a cloud on the title transferred by

Fulop to Narrative Ark causing Fulop to suffer special damages in the form of legal costs and expenses, lost licensing revenues and lost commercial opportunities." (Fulop's Br. at 15). Having asserted no more than a threadbare recital of the elements of a cause of action, supported by a wholly conclusory statement, Fulop's request is denied.

## CONCLUSION

Archie's partial motion to dismiss is GRANTED. (Doc. #41).

Sega's motion to dismiss is GRANTED and its motion for a more definitive statement is DENIED as moot. (Doc. #47).

Fulop's motion to strike or dismiss the amended third-party complaint is DENIED, and his application to add Jonathan Goldwater and Nancy Silberkleit as third-party counter defendants is also DENIED. (Doc. #78).

The Court will schedule an initial conference by separate order.

The Clerk is instructed to terminate the motions. (Docs. ##41, 47, and 78).

The Clerk is further instructed to terminate defendant Sega of America, Inc.

Dated: September 5, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge