LAW OFFICES OF NEIL A. BURSTEIN

Westchester Office
63 Winterberry Circle
Cross River, New York 10518

Attorney and Counsel at Law

Neil A. Burstein
www.neilburstein.com
email: nabesq1@gmail.com
phone: 914-977-3467

February 20, 2018

The Honorable Vincent L. Briccetti
United States Judge
United States District Court
300 Quarropas Street, Room 630
White Plains, NY 10601

        **Re: Narrative Ark Entertainment LLC v. Archie Comic Publications, Inc., et. al.
          Index No. 7:16-cv-06109-VB**

Dear Judge Briccetti:

      This letter is being submitted in response to your Honor's decision deferring ruling on Defendant's Letter Motion [99] requesting a telephonic conference to address the entry of a Protective Order and directing Plaintiff to submit a response. Plaintiff is mindful of Local Civil Rule 26.4 and has attempted in good faith to work out a mutually acceptable Protective Order. When, for the reasons set forth below, the parties were not able to agree, counsel for Plaintiff suggested a telephonic conference with the Court to assist the parties in resolving the open issues. Defendant ACP subsequently filed the instant Letter Motion.

      The letter by counsel for Defendant ACP correctly notes that the key point to the dispute is the attempt by Defendant for inclusion of a "Confidential-Attorneys' Eyes Only" designation (limiting access of so-designated documents to only the parties' attorneys). To be clear, Plaintiff does not object to the issuance of a protective order to keep documents confidential. The objection is to the level and scope of protection imposed by the Attorneys Eyes Only ("AEO") allowing defendant to unilaterally make such designation without demonstrating good cause.

      In an attempt to work out a mutually acceptable agreement, counsel for Plaintiff had prepared a more reasonable and less restrictive form of Protective Order which provided for the protection of documents designated "Confidentiality" but allowed the parties to be able to discuss and view such documents on a confidential basis with their respective clients.

      Plaintiff believes that the "AEO inclusion demanded by Defendant is unduly restrictive in both time and scope, imposes an unfair burden on Plaintiff, and effectively deprives counsel for Plaintiff of the right to confer with his client about documents relevant to the case. Nevertheless, in an effort to work out a mutually acceptable protective order, Plaintiff was willing to consider

under what limited circumstances (if any) an AEO designation might be appropriate. Accordingly, Defendant ACP was requested to provide a list of the documents which ACP claimed were covered by third party confidentiality agreements which limited disclosure to "an attorney eyes only".  Having claimed the existence of such third party confidentiality agreements, Defendant's refusal to provide the requested list is perhaps telling that none of these alleged agreements required "attorney eyes only".  Most commercial confidentiality agreements do *not* generally require "attorney eyes only" in the handling of documents and sensitive materials.

It should also be noted that Rule 26 C does not provide any guidelines or authority on the specific form or type of protective order which is in the discretion of the Court.  However, Rule 26 C (7) does specify what type of information may be limited by the protective order.  Under this provision, the Court may order that "trade secrets, or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way. To the extent a party seeks a protective order under Rule 26 C, that party "has the burden of showing that good cause exists for issuance of that orde r." Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 ( 2d Cir. 2004).  Merely alleging competitive harm is not sufficient.  In contested motions involving protective orders, "most courts reject "broad allegations of harm" and instead require a movant demonstrate a particular need for protection "by specific examples or articulated reasoning. The, harm, must be "significant and a clearly defined and serious injury.  *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)

Counsel for ACP claims it needs the more restrictive two-tiered form of protective order with the AEO designation" because of the "sensitive nature of the documents for which Narrative and Fulop have sought production…" [Dkt.99. pg.2, ¶1].  However, ACP has not demonstrated good cause to impose this more restrictive designation.  Merely alleging competitive harm is not sufficient.  "A bald statement that disclosure would cause substantial harm if revealed is an example of the typical, broad declaration that falls short of good cause". See, *National Hand Tool Corp v. United States*, No. 89-11-00636, 1990 Ct. Int'l Trade LEXIS 320, at *2 (Ct Int'l Trade July 23, 1990).

ACP cites the case of *Errant Gene Therapeutics, LLC v. Sloan Kettering Institute for Cancer Research*, No. 15-CV-2044 (AJN) (RLE). 2016 WL 4618972 (S.D.N.Y. Sept 2, 2016) in support of its contention that the AEO designation is justified here.  However, the facts in *Errant* are very different from the instant case. In *Errant*, clinical and medical research of a highly sensitive and competitive nature were at issue. Here, we are dealing comic books licensing terms and royalty rates (with such terms and rates being generally known in the industry), not trade secrets and patentable intellectual property.  Significantly, the parties in *Errant* had also negotiated a protective order and submitted briefs as to the scope of the discovery to be categorized as "Attorney Eyes Only".  Further, and unlike the instant case, the parties were competitors and the information for which protection was sought was of current vintage.

The party seeking a protective order has the burden of demonstrating that good cause exists for issuance of the order." *Uniroyal Chem. Co. v. Syngenta Crop Prat.,* 224 F.R.D. 53, 56 (D. Conn. 2004) (internal citations omitted); *see also Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d Cir. 1992) (citations omitted). More than "[b]road allegations of harm unsubstantiated

by specific examples or articulated reasoning," good cause requires "the moving party [to] demonstrate that 'disclosure will work a clearly defined and very serious injury.'" *Uniroyal Chem. Co.,* 224 F.R.D. at 56 (internal citations omitted). "Whether information merits protection in a particular case depends upon: 1) the extent to which the information is known outside the business; 2) the extent to which information is known to those inside the business; 3) the measures taken to guard the secrecy of the information; and 4) the value of the information to the business and its competitors." *Uniroyal Chem. Co.,* 224 F.R.D. at 56-57.   Here, all the factors weigh heavily against Defendant ACP. While working as a staff employee and freelance creator for ACP, the information being claimed as confidential was likely known to Plaintiff having worked both inside and outside the business. Further, Defendant did not take measures to guard the secrecy of the information by requiring Plaintiff to sign a confidentiality or non-disclosure agreement. Nor, to the best of Plaintiff's knowledge, did ACP require other freelance creators to sign such agreements. Moreover, the value of any information involved here is greatly diminished by the time factor or are otherwise already in the public domain.

  ACP's essential contention is that good cause exists for the two tier form of protective order because Plaintiff is somehow a direct competitor of ACP by virtue of claiming "copyright in certain works previously published as part of ACP's comic books…"  This contention is just erroneous. Mere copyright ownership does not make one a competitor and there is no authority cited for such a proposition. Here, Plaintiff has never published, sold, distributed or licensed Sonic comic books or any other publications, nor is it likely to do so in the near future. Even assuming *arguendo*, that Plaintiff is a competitor, the relevant competitor would be Sega of America, Inc. and *not* Defendant ACP. It is a matter of public record that Defendant ACP is no longer the holder of the license rights to Sonic the Hedgehog comic books. Any future licensing deal would be between Plaintiff and Sega of America, Inc. (the rights holder of Sonic the Hedgehog and the Sonic cast of characters) and *not* ACP.  Thus, there is no basis whatsoever for ACP's claim that Plaintiff is "effectively a direct licensing competitor of ACP" and that it would gain a "significant unfair competitive advantage in any future negotiations" [Dkt. 99, Pg. 2, ¶ 7].

  In addition, there are other reasons why the more restrictive two-tiered form of protective order is not warranted here.  Plaintiff, worked for ACP as a staff editor for many years and is already aware of much of the information and documents likely to be claimed by ACP as highly confidential. After leaving the employ of ACP, Fulop also worked as a freelance creator for ACP for several years. Significantly, in neither instance, was he asked or required to sign any confidentiality agreements. Nor to his knowledge, were any of the other staff employees or freelance creators required to sign such agreements. Clearly, ACP never treated these materials as trade secrets or highly confidential in the past and cannot seek to do so at this late date.

  Moreover, many of the documents in issue are well over three years old (most between five and ten years). The applicable cases hold that any attempt to show serious competitive disadvantage, may be undermined by the age of the material in question. See, e.g., *Brittain*, 136 F.R.D. at 416 (three year old documents undercut defendant's position that disclosure would result in competitive harm); *Deford,* 120 F.R.D. at 653-54 483, 485 (D.N.J. 1990) (ten-year old documents undercut defendant's position that disclosure that they were a valuable asset); *United States v. International Business Machs. Corp.*, 67 F.R.D, 40 , 48-49 (S.D.N.Y. 1975) (three-to fifteen year old documents undercut defendant's position that disclosure would result in competitive harm); *Rosenblatt v. Northwest Airlines*, 54 F.R.D. 21, 23 (S.D.N.Y. 1971) (one year

old document undercut defendant's position that disclosure would result in competitive harm). Significantly, courts in the second circuit have found that even documents of one to three years old undercut any arguments of competitive harm.

While Defendants inclusion of a "Confidential-Attorneys' Eyes Only" designation (limiting access of so-designated documents to the parties' attorneys) does include a mechanism for contesting such designation, such mechanism works to the extreme disadvantage of Plaintiff. Plaintiff would have the expense of having to challenge such designations which only ensures further motion practice, delay and waste of judicial resources.  Moreover, Defendant's economic strength and size makes resisting or pursuing discovery significantly easier for Defendant than it is for Plaintiff.

Lastly, the "attorneys eyes only" designation would seriously undermine counsel's ability to freely discuss relevant documents with his client. Plaintiff worked in the comic book industry for many years and is familiar with industry custom and practices. The client's active participation and right to access the documents in issue are essential to a fair trial.  On the other hand, even without the more restrictive AEO designation, ACP would still be protected by being able to designate "Confidential" any documents ACP deemed confidential and wanted to keep from public disclosure. Such confidential documents would not be used outside the litigation.

It is respectfully submitted that the Protective Order proposed by Plaintiff providing for the "Confidential" designation of designated documents would be more than adequate to protect the interest of all parties. However, if the Court deems necessary to provide for an AEO designation in the Protective Order, it is respectfully submitted that such designation be allowed only for recent documents (or according to such other requirements as the Court deems fair and just).

Thank you for your consideration.

Respectfully submitted,

/nab/Neil Burstein

Neil A. Burstein
Attorney for Plaintiff

cc: All counsel of record (via ECF)

c\ACP_Litigation_discovery_6.5