```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NARRATIVE ARK ENTERTAINMENT LLC,              :
                    Plaintiff,                :
v.                                            :
                                              :
ARCHIE COMIC PUBLICATIONS, INC.,              :
                    Defendant.                :       OPINION AND ORDER
--------------------------------------------------------------x
ARCHIE COMIC PUBLICATIONS, INC.,              :       16 CV 6109 (VB)
                    Third-Party Plaintiff,    :
v.                                            :
                                              :
SCOTT D. FULOP,                               :
                    Third-Party Defendant.    :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Narrative Ark Entertainment, LLC ("Narrative Ark"), brings this action under the Copyright Act against defendant Archie Comic Publications, Inc. ("Archie"), asserting Archie has infringed Narrative Ark's copyrights in certain materials appearing in comic books published by Archie. Archie believes it, not Narrative Ark, owns the copyrights in question; it has pleaded a counterclaim against Narrative Ark for declaratory relief, and a claim for slander of title against Narrative Ark's principal, third-party defendant Scott Fulop.

Now pending are (i) Archie's motion for summary judgment on Narrative Ark's claims (Doc. #130); (ii) Narrative Ark and Fulop's cross-motion for summary judgment on Archie's counterclaim and third-party claim (Doc. #136); and (iii) Archie's motion to strike portions of Narrative Ark and Fulop's joint statement of undisputed material facts (Doc. #145).

For the reasons set forth below, Archie's motion for summary judgment is GRANTED, Narrative Ark and Fulop's cross-motion for summary judgment is GRANTED, and Archie's motion to strike is DENIED.

1

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

The parties have submitted briefs, statements of material facts, declarations, and exhibits, all of which reflect the following factual background.[1]

Archie produces and publishes comic books. From 1996 to 1998, Fulop worked for Archie as a freelance writer and artist, after two prior stints as an employee.

This case concerns certain materials (the "registered works") in a comic book series (the "series") published and produced by Archie and containing elements of the videogame "Sonic the Hedgehog." Former defendant Sega of America, Inc. ("Sega") produced that videogame and, in 1992, licensed elements of it, including its titular character, to Archie for use in Archie's comics.[2] As a freelancer, Fulop's work for Archie included creating and developing stories, scripts, artwork, and characters for the series.

Archie paid Fulop for his work on each of the registered works. However, there is no evidence Archie and Fulop ever signed an agreement governing their relationship or the ownership of Fulop's work product.[3] Among Fulop's collaborators in creating the registered works was nonparty freelancer Ken Penders.

---

[1] The Court notes that counsel to Narrative Ark and Fulop sent the Court courtesy copies of the full transcripts of Fulop's two depositions in this case, but counsel never filed either transcript as part of the summary judgment record. The Court has disregarded counsel's presumably inadvertent ex parte submission of the transcripts.

[2] The Court previously granted Sega's motion to dismiss Narrative Ark's claims against Sega. (See Doc. #90).

[3] Archie asserts Fulop did sign such an agreement. In support, Archie points to Fulop's testimony that he helped develop a form independent contractor agreement for Archie in 1988 and 1989, when Fulop was an Archie employee. (See Doc. #141 ("Supp. Ferdinand Decl.") Ex. 5 at 62, 73–74). Archie also notes "[a]t least one form of" the agreement Fulop helped develop

2

From 2004 to the present,[4] Archie has published and reprinted the registered works in various forms without paying Fulop compensation. Fulop concedes he knew by November 2010 of Archie's allegedly infringing disseminations of the registered works.

Between February 2009 and May 2010, Fulop filed, in some instances along with Penders, eleven copyright registrations covering the registered works. In October 2015, Fulop assigned his interests in those copyrights to Narrative Ark, a limited liability company Fulop founded for that purpose and of which Fulop is the sole member.

In 2010, Archie brought a lawsuit against Penders for declaratory and other relief, claiming Archie owned certain works Penders created for the series as an independent contractor. Penders pleaded counterclaims against Archie for copyright infringement and declaratory relief. Fulop, at his deposition in the instant case, described the Penders litigation as "a copyright litigation lawsuit that involves characters or stories that I worked on, specifically for Sonic the Hedgehog for Archie Comics." (Ferdinand Decl. Ex. 17 at 162). Fulop knew of the Penders litigation during its pendency. Indeed, Fulop signed an affidavit dated March 6, 2012, supporting Penders's claims. (Id. Ex. 21).

---

contained provisions vesting in Archie ownership of works created by independent contractors. (Doc. #143 ¶ 101). *(Footnote continued on next page).*
     Notwithstanding, Archie offers no evidence of a written agreement with Fulop. Fulop's testimony concerning his drafting of independent contractor agreements for Archie in the 1980s is immaterial to the question of whether Fulop signed a written agreement when he began working for Archie as a freelancer in 1996. Thus, the testimony does not place in genuine factual dispute whether Fulop signed a written agreement with Archie as a freelancer.

4     Narrative Ark purports to dispute this timeframe in its counterstatement of material facts, but Narrative Ark fails to cite any admissible record evidence controverting it. (See Doc. #136-10 ("Pl. Counterstmt.") ¶ 65). Thus, the timeframe is deemed admitted for purposes of this motion. See Fed. R. Civ. P. 56(e); Local Civil Rule 56.1(d).

Between September 2011 and July 2013, Archie filed copyright registrations naming itself as the author, and Sega as the copyright claimant, of works that allegedly infringe five of Narrative Ark's copyright registrations covering the registered works. (See Ferdinand Decl. Ex. 8).

No later than 2012, Archie, purporting to own the registered works, transferred and assigned to Sega Archie's interest in and rights to them.[5] (See Ferdinand Decl. Ex. 23). Thus, on Archie's telling, Sega now owns the copyrights to the registered works.

Narrative Ark and Fulop claim Archie paid Fulop for his work on the registered works in exchange for only "first publication rights in North America." (Doc. #38 ("Am. Compl.") ¶ 27). Pursuant to this understanding, according to Narrative Ark and Fulop, Fulop retained, and then transferred to Narrative Ark, ownership of the registered works. Thus, Narrative Ark and Fulop say any subsequent publication by Archie of a registered work (or any publication of a registered work outside North America) infringes Narrative Ark's copyrights.

Archie disagrees. It claims Fulop created each registered work for Archie as a "work made for hire"—a designation that, when the work in question was created by an independent contractor, obtains only "if the parties expressly [so] agree in a written instrument signed by them." 17 U.S.C. § 101. If Fulop created the registered works as works for hire, then Archie owned and obtained the rights to each registered work upon its creation, and then transferred those rights to Sega no later than 2012.

---

[5] The contract consummating this transfer and assignment states Archie and Sega intended to make this transaction through prior contracts signed in 1992 and 2002; however, the 2012 contract acknowledges Archie "may not have" successfully accomplished the transaction through those prior contracts. (Ferdinand Decl. Ex. 23 ¶ 6.3.1).

4

Fulop first asserted his claims against Archie in a demand letter sent in October 2015. He consciously chose to wait until then to do so "[f]or several reasons," including because he was researching his options, "waiting for the outcome" of the Penders litigation, and "finding appropriate legal counsel." (Ferdinand Decl. Ex. 17 at 161–62, 164).

On August 1, 2016, Narrative Ark commenced this action.

The Court has previously dismissed the lion's share of Narrative Ark's claims. (See Doc. #90). The only remaining causes of action are (i) Narrative Ark's claims for copyright infringement and declaratory relief, (ii) Archie's counterclaim for declaratory relief, and (iii) Archie's third-party claim against Fulop for slander of title.

## DISCUSSION

I. Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[6]

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether

---

[6] Unless otherwise indicated, case quotations omit all citations, internal quotation marks, footnotes, and alterations.

5

there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.   Narrative Ark's Claims

Archie argues Narrative Ark's claims against Archie are time-barred.

The Court agrees.

The timeliness of Narrative Ark's causes of action turns on whether the gravamen of those claims is <u>ownership</u> of the registered works, or <u>infringement</u> of Narrative Ark's rights in the registered works. Either way, a three-year limitations period applies. See <u>Kwan v. Schlein</u>, 634 F.3d 224, 228 (2d Cir. 2011) (quoting 17 U.S.C. § 507(b)). However, that three-year period operates differently depending on the gravamen of the claims.

When a copyright claim sounds in ownership, the claim accrues, and the three-year clock starts ticking, when "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a[n ownership] right"—a discrete event that happens "only once." <u>Kwan v. Schlein</u>, 634 F.3d at 228. In contrast, a copyright case sounding in infringement is timely filed "within three years of <u>any</u> infringing act." <u>Id</u>. Thus, the limitations period for an infringement claim starts running anew each time the defendant commits infringement.

When an "ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail." <u>Kwan v. Schlein</u>, 634 F.3d at 230. In other words, when "the gravamen of a plaintiff's copyright claims is ownership, and not infringement, the infringement claims are barred if the ownership claim is time-barred, even if the infringing acts occurred within the last three years." <u>Walker v. Carter</u>, 210 F. Supp. 3d 487, 504 (S.D.N.Y. 2016); see <u>Gary Friedrich Enters., LLC v. Marvel Characters, Inc.</u>, 716 F.3d 302, 317 n.13 (2d Cir. 2013) ("[A] stale ownership claim bars recovery for all subsequent infringement claims."). Proper classification of Narrative Ark's claims is therefore a matter "of great consequence" in this case. <u>Walker v. Carter</u>, 210 F. Supp. 3d at 504.

7

To determine whether a copyright claim is one for ownership or infringement, when such a claim accrued, and whether the limitations period has expired, courts "examine the substance of the claim, rather than how plaintiffs label the cause of action." Walker v. Carter, 210 F. Supp. 3d at 505 (collecting cases). Salient factors include "whether the plaintiff concedes in any filings that questions of ownership and authorship are at the heart of the claim"; whether the defendant concedes that the plaintiff owns the copyrights in question; "whether the plaintiff alleges anything specific about the means of infringement"; and whether both parties "claim ownership of the copyrights." Id.

A. Gravamen of Narrative Ark's Claims

Narrative Ark's claims against Archie sound in ownership, not infringement. The parties' only principal disagreement in this case is who owns the copyrights to the registered works—Narrative Ark, having obtained the copyrights from Fulop; or Sega, having obtained the copyrights from Archie. Put another way, there is no dispute that if Narrative Ark owns the copyrights, then Archie has infringed them. Instead, the dispute centers on whether Narrative Ark or Archie is correct in claiming ownership of the registered works.

Narrative Ark's principal argument resisting this conclusion is that Archie purportedly "has conceded that it never owned the copyrights." (Doc. #136 at 11). Archie has done no such thing. Its chief operating officer, William Mooar, testified that Sega "owns the copyrights to the property." (Supp. Ferdinand Decl. Ex. 6 at 91). A letter from Archie's attorneys to the Court dated September 7, 2018, likewise acknowledges that "[Sega], and not [Archie], is the copyright-owner of the disputed Works At Issue." (Doc. #126 at 1). Contrary to Narrative Ark's contention, these present-tense statements do not mean Sega always owned the copyrights. They

8

simply mean Sega owns the copyrights now. That assertion jibes with Archie's claim that it transferred the copyrights to Sega no later than 2012.[7]

The amended complaint's factual allegations also point to an ownership dispute. The amended complaint alleges "Defendant [Archie] and [then-]Defendant Sega never obtained ownership of the copyrights" to the registered works (Am. Compl. ¶ 63); that Archie "falsely claim[ed] ownership, and represent[ed] to the U.S. Copyright Office and the public that the entire ownership of the copyrights belonged to Defendants rather than assigning proper ownership and attribution to Fulop or [Narrative Ark]" (id. ¶ 69); that Archie "knew, or should have known" it "had no right to . . . claim authorship and ownership in the copyright of the works created by Fulop which are now owned by [Narrative Ark]" (id. ¶ 70); and that Archie has "asserted and continue[s] to assert a plain and express claim of authorship and ownership in works which were in fact created and owned by Fulop and which are now owned by [Narrative Ark]" (id. ¶ 71). Moreover, the amended complaint identifies Archie's alleged "actions and wrongful assertions of copyright ownership" in the registered works as "distinct, independent and continuing acts of infringement[]." (Id. ¶ 73). These allegations, along with Narrative Ark and Archie's competing claims of ownership, place the parties' disputed ownership of the registered works at the heart of this case.

To be sure, the amended complaint contains "specific [allegations] about the means of infringement," a potential indicator Narrative Ark's claims may sound in infringement. Walker v. Carter, 210 F. Supp. 3d at 505. But Archie concedes it has published and reprinted the

---

[7] Narrative Ark also emphasizes that Archie has not produced a written independent contractor agreement with Fulop containing a work for hire provision. Narrative Ark correctly notes that this deficiency casts serious doubt on Archie's argument that Fulop created the registered works as works for hire. However, this point goes to the merits of Archie's ownership argument, not the timeliness of Narrative Ark's claims.

9

registered works as Narrative Ark describes; Archie argues its conduct was proper because it owned the registered works.  Viewed in context, Narrative Ark's allegations of infringing conduct by Archie do not suffice to overcome the other strong indicators that this case boils down to an ownership dispute.

For all these reasons, ownership, not infringement, "form[s] the backbone of this dispute."  Philogene v. Duckett, 2018 WL 3946447, at *5 (S.D.N.Y. Aug. 16, 2018).  Accordingly, Narrative Ark's claims are untimely unless Narrative Ark filed them within three years after they accrued.

B.     Accrual

Narrative Ark's claims accrued more than three years before this case was commenced.  They are therefore untimely.

As noted above, a copyright ownership claim accrues only once, "when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a[n ownership] right."  Kwan v. Schlein, 634 F.3d at 228.  This rule "promotes the principles of repose integral to a properly functioning copyright market."  Merchant v. Levy, 92 F.3d 51, 57 (2d Cir. 1996).

"[A]ny number of events can trigger the accrual of an ownership claim."  Kwan v. Schlein, 634 F.3d at 228.  Potential triggering events include (i) a work's publication "without the alleged author receiving appropriate billing credit," (ii) presentation to the alleged author of "contractual language exclusively identifying other individuals as authors of the work," and (iii) the alleged author "learn[ing] that they are entitled to royalties they are not receiving."  Horror Inc. v. Miller, 335 F. Supp. 3d 273, 314 (D. Conn. 2018), appeal docketed, No. 18-3123 (2d Cir. Oct. 19, 2018).

Archie proposes, in the alternative, four accrual dates for Narrative Ark's claims, each of which renders those claims untimely: (i) no later than June 2013, when Fulop viewed Archie's publication of the registered works with copyright notices identifying Sega, not Fulop, as the copyright owner; (ii) no later than 2010, when Fulop learned of Archie's allegedly infringing disseminations of the registered works without paying Fulop royalties; (iii) no later than July 2013, when Archie submitted the last of its copyright filings for publications that included five of the registered works; and (iv) no later than March 6, 2012, the date of Fulop's affidavit filed in the Penders litigation.

Of these four potential accrual dates, Narrative Ark challenges only the first, arguing the copyright notices on Archie's publications of the registered works did not place Narrative Ark or Fulop on notice of Archie or Sega's claim to own the registered works. Even setting that disputed point aside, Narrative Ark's claims plainly accrued more than three years before this case began. Fulop does not dispute he knew by 2010 that Archie was reprinting the registered works, and that Fulop spoke with Penders in or before 2010 "because [Fulop] thought [his] copyrights were being infringed." (Ferdinand Decl. Ex. 17 at 60). Fulop also testified he read articles about the Penders litigation, which he described as "a copyright litigation lawsuit that involves characters or stories that I worked on, specifically for Sonic the Hedgehog for Archie Comics" (id. at 162), during that lawsuit's pendency. Fulop then undisputedly consciously chose to wait until 2015 to assert his claims against Archie, in part because Fulop wanted to wait until the Penders litigation was resolved. (See id. at 161).

Viewing the circumstances in their totality, the information Fulop possessed more than three years before commencing this action—including that Archie was disseminating the registered works without compensating Fulop, and that Archie had filed a copyright lawsuit

11

against Fulop's collaborator, the scope of which included works Fulop created or co-created for the series—would have placed "a reasonably diligent plaintiff" on notice of Archie's claim to own the registered works. Kwan v. Schlein, 634 F.3d at 228. Accordingly, the three-year limitations period expired before Narrative Ark filed this lawsuit.

The Court therefore dismisses Narrative Ark's claims as time-barred.

III. Archie's Counterclaim and Third-Party Claim

The Court now turns to Narrative Ark and Fulop's joint cross-motion for summary judgment on Archie's counterclaim and third-party claim.

A. Declaratory Judgment Claim against Narrative Ark

Narrative Ark argues Archie lacks statutory standing to pursue its declaratory counterclaim against Narrative Ark, because Archie is not the legal or beneficial owner of an exclusive right in any registered work.

The Court agrees.

Archie's counterclaim rests on its purported ownership of the registered works upon their creation, as works for hire Fulop allegedly created for Archie as an independent contractor. Even assuming, for argument's sake, that Fulop did create the registered works for Archie as works for hire, Archie lacks statutory standing to pursue its counterclaim.

Pursuant to Section 501(b) of the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right <u>committed while he or she is the owner of it</u>." 17 U.S.C. § 501(b) (emphasis added).

Narrative Ark obtained Fulop's rights to the registered works, if any, in 2015.

Archie transferred to Sega Archie's rights to and interest in the registered works, if any, several years earlier, no later than 2012. In the contract effecting that transaction, Archie explicitly and "irrevocably transfer[red] and assign[ed]" to Sega "all right, title and interest in and to . . . ; and all causes of action, either in law or in equity for past, present, or future infringement based [on]," the rights to intellectual property including the registered works. (Supp. Ferdinand Decl. Ex. 23 ¶ 6.3.1). This provision transferred from Archie to Sega any cause of action for infringement of the registered works that accrued while Archie ostensibly owned the copyrights to the registered works. Cf. Intimo, Inc. v. Briefly Stated, Inc., 948 F. Supp. 315, 317 (S.D.N.Y. 1996) ("An assignment may confer the right to a claim for prior [copyright] infringement, but only if that right is explicitly transferred.").

Thus, Archie (i) does not currently own the copyrights; (ii) did not own the copyrights at any time when Narrative Ark claims to have owned them; and (iii) transferred to Sega Archie's rights to sue Narrative Ark for infringing Archie's purported ownership of the registered works.

Accordingly, Archie lacks statutory standing to countersue Narrative Ark under Section 501(b) of the Copyright Act.[8] The Court therefore grants Narrative Ark's cross-motion for summary judgment on Archie's counterclaim.

B. Slander of Title Claim against Fulop

Fulop argues no reasonable juror could conclude Fulop acted with the mens rea necessary to sustain Archie's counterclaim against him for slander of title.

The Court agrees.

---

[8] Archie's argument that it at one point held exclusive rights to the registered works, before later transferring those rights to Sega (see Def. Reply Br. at 11), is of no moment.

To prove its claim for slander of title, Archie must show "(1) a false statement; (2) published by the defendant; (3) without justification or privilege; (4) made with malice; and (5) causing special damages to" Archie. Macia v. Microsoft Corp., 152 F. Supp. 2d 535, 541 (D. Vt. 2001).

Here, the parties train their attention on the malice requirement. "Malice is generally shown by presenting evidence of the defendant's statements, acts, and the surrounding circumstances from which an inference of malice may be drawn." Peterson v. Trustee, 2016 WL 5420565, at *6 (D. Conn. Sept. 27, 2016). In the slander-of-title context, some courts require a showing of "'common law malice,' i.e., ill will," while others require a showing of "'actual malice,' i.e., a reckless disregard for the truth or falsity of the statement." Chamilia, LLC v. Pandora Jewelry, LLC, 2007 WL 2781246, at *11 (S.D.N.Y. Sept. 24, 2007).

Archie has not offered any probative evidence that Fulop acted with malice of either kind. The only evidence to which Archie points in this regard are five sentences Fulop uttered at his deposition. (See Doc. #139 ("Def. Reply Br.") at 15–16). The colloquy in question concerned an alleged statement by Penders that he "had an e-mail which listed specific stories from [Fulop] in which [Fulop] transferred ownership interests in the story to me." (Supp. Ferdinand Decl. Ex. 5 at 253).[9] In substance, Fulop (i) acknowledged transferring to Penders the rights to one work Fulop created for Archie; (ii) stated he otherwise did not recall transferring any other rights to Penders and did not know what Penders was talking about; and (iii) stated he did not recall the email to which Penders's alleged statement refers. (See id. at 252–53, 255–56).

---

[9] Narrative Ark's counsel also quoted this statement as referring to "certain stories" rather than "the story." (Supp. Ferdinand Decl. Ex. 5 at 253).

14

Archie mischaracterizes these remarks as admissions that Fulop "does not own—and importantly, does not know whether he owns—the copyrights to all of" the registered works. (Def. Reply Br. at 16).  This obvious distortion of Fulop's statements plainly does not suffice to place into genuine factual dispute whether Fulop acted with malice by falsely claiming to own the copyrights to the registered works.

Accordingly, the Court grants Fulop's motion for summary judgment on Archie's third-party claim.

IV.   Archie's Motion to Strike

Finally, Archie's motion to strike certain paragraphs of Narrative Ark and Fulop's joint statement of undisputed material facts, on the ground that those paragraphs lack adequate citations to the summary judgment record, is superfluous.  The Court has relied on Narrative Ark and Fulop's joint statement only insofar as its contents are properly supported by admissible record evidence.  The Court has not based its analysis or conclusions on any purportedly undisputed facts lacking adequate evidentiary support.

Accordingly, Archie's motion to strike is denied.

## CONCLUSION

Archie's motion for summary judgment on Narrative Ark's claims is GRANTED.

Narrative Ark and Fulop's joint cross-motion for summary judgment on Archie's counterclaim and third-party claim is GRANTED.

Archie's motion to strike is DENIED.

The Clerk is directed to terminate the motions (Docs. ##130, 145) and close this case.

Dated: August 29, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge